Reid *v.* McNaughton.

———————•♦•———————

REID *vs.* McNAUGHTON.

The payment of interest, by one of two makers of a joint and several promissory note, before the statute of limitations has attached, will take the case out of the statute, as to both makers, and continue the liability of each upon the note, for six years from the time of such payment. CADY, J. dissented.

*Van Keuren* v. *Parmelee,* (2 *Comst,* 523,) distinguished from the present case.

This was an action on a joint and several promissory note, made by John Crary as principal, and John McNaughton as

Reid *v.* McNaughton.

surety, for two hundred dollars, with interest annually, and payable to the order of Daniel Reid, and dated July 23, 1841. The complaint, after setting out the note in full, stated the death of Daniel Reid, his last will and testament, and the probate thereof, and the regular transfer of the note to the plaintiff, and demanded judgment for the amount of said note, together with the interest from 23d of July, 1845. The answer put in issue the whole complaint, and also set up that the action did not accrue within six years. The reply was that the action did accrue within six years; and also that the defendant on the 14th October, 1845, acknowledged the cause of action and promised to pay, &c.

On the trial at the Washington circuit in February, 1852, before Willard, P. J. without a jury, the following facts were found by the judge. 1st. That John Crary and John McNaughton, on the 23d July, 1841, made their note in writing as set forth in the complaint. 2d. That John Crary, on the 14th October, 1845, paid fourteen dollars for the interest on the said note for one year, due on the 23d July preceding; the interest for the preceding years having been regularly paid. 3d. That John Crary died in May, 1848. 4th. That this action was commenced October 8, 1851. 5th. That the plaintiff was at the commencement of this action and still is the owner of the said note, and that the sum due 24th February, 1852, was $292,12. And as a conclusion of law from these facts, the judge found that the plaintiff was entitled to recover against the defendant John McNaughton, the amount due upon the note, and he gave judgment accordingly. There were some other facts proved, but they were not material to the point on which the cause turned, and were disregarded. The defendant's counsel excepted to the decision of the judge, and appealed to this court.

*C. Crary*, for the appellant.

*J. S. Coon*, for the respondent.

WILLARD, P. J. The only question which fairly arises on this appeal is, whether the payment of interest by Mr. Crary,

Reid *v.* McNaughton.

one of the joint and several makers, took the case out of the statute of limitations, as to McNaughton; the action having been brought within six years from the time such payment was made.

Prior to the decision of the court of appeals in *Van Keuren* v. *Parmelee*, (2 *Comst.* 523,) and the decisions of the supreme court in *Bogert* v. *Vermilya*, (10 *Barb.* 32,) and *Dunham* v. *Dodge*, (*Id.* 566,) the right of the plaintiff to recover upon the evidence in this case would have been unquestionable. Fluctuating as the decisions may have been, on what shall constitute a new promise, no case has been found where the payment of interest on a debt has not been held to be evidence of a present liability to pay the principal. Many of the cases on this subject are collected by Allen, J. in *Dunham* v. *Dodge*, (*supra*,) and I shall take occasion to notice them, and others, in the course of this opinion. But before I do so, it may be well to see how far we are concluded in this case by *Bogert* v. *Vermilya*, *Dunham* v. *Dodge*, and *Van Keuren* v. *Parmelee*, (*supra*.)

The case of *Bogert* v. *Vermilya* was on a joint and several promissory note made by the defendant and one Bogert, and it was sought to continue the liability of the defendant by payments made on the note by Bogert, before the statute had attached. This evidence was held sufficient, by the circuit judge, for that purpose, but the judgment was reversed, solely upon the ground that in the opinion of the learned judge who delivered the judgment, the court of appeals, in *Van Keuren* v. *Parmelee*, had shown that the rule holding that payment by one joint debtor revives a debt against his companion was wrong, and was distinctly overruled. The case of *Bogert* v. *Vermilya* differs from the one under consideration, in this, that in the latter the payment was expressly of the *interest* for one year, and which satisfied the interest up to a given period, and was made two years before the statute of limitations had attached; whereas, in *Bogert* v. *Vermilya*, the payments are not stated to be of interest. It is merely said that Bogert had made payments on the note, within six years before the commencement of the suit, mentioning one sum of fifty dollars, which was paid after the statute of

limitations had attached. It does not appear that either of the other payments was made by Bogert *before* the note was barred. The contrary is plainly to be inferred. In both these respects, it essentially differs from the principal case.

In *Dunham* v. *Dodge*, the partial payments by one of the makers of the note are stated to have been made *before* the statute had attached, and within six years before the commencement of the action, but it does not appear that they were payments of *interest*. Nor is there enough stated to show that they were made in good faith, in the ordinary course of business. The cause was decided solely upon the authority of *Van Keuren* v. *Parmelee*, and if the latter is distinguishable from the present, as I think it is, both the others, for that reason alone, cease to be authority against the decision of the judge at the circuit in this cause.

I do not mean, however, to lay much stress on these points of difference; for it will be shown in a moment, that the case upon which the learned judges relied, does not warrant the conclusions which they deduced from it; and that neither of those cases can be supported upon principle. In *Van Keuren* v. *Parmelee*, (2 *Comst.* 523,) the case was this: Van Keuren brought assumpsit in the supreme court, against R. W. Parmelee, W. H. Calkins and John Van Keuren. The defendants Parmelee and Calkins pleaded the general issue and statute of limitations. On the trial before Barculo, J. at the Dutchess circuit in October, 1848, the jury found a special verdict, stating that the defendants, while partners in trade under the name and style of Parmelee, Van Keuren & Co., on the 1st of May, 1831, gave their note to the plaintiff for $530, payable on demand; that the consideration of the note was money lent to the firm and used in its business; that within six years of the commencement of the suit, but *after the dissolution*, the defendant John Van Keuren acknowledged the existence of the debt and promised to pay it, but whether &c. The supreme court for the second district, rendered judgment for the plaintiff for the amount of the note and interest, as found by the special verdict,

and the defendants Parmelee & Calkins appealed to the court of appeals.

It is quite clear that this judgment could have been reversed without impairing the doctrine that an acknowledgment by one joint maker is evidence against all, sufficient to remove the bar of the statute of limitations. The jury should have been instructed to find a promise by the other defendants from the acknowledgment of their associate. This was not a fact which the court could adjudge as matter of law, any more than they could adjudge a conversion in an action of trover, from a special verdict, finding a demand and refusal. The supreme court, instead of giving judgment on the verdict, should have awarded a *venire de novo.* That case, moreover, is distinguishable from the one under consideration in several other particulars. 1. The statute bar was sought to be removed by a *promise* of one *late* partner, and not by the *payment of interest* on a debt. 2. The promise of the partner was made at least ten years *after the dissolution of the partnership.* In all these respects it essentially differs both from the case under consideration, and even from *Bogert* v. *Vermilyea* and *Dunham* v. *Dodge.* The great deference which is justly due to the judgments of the court of appeals, and especially to the opinions of the eminent chief judge, by whom the case of *Van Keuren* v. *Parmelee* was decided, led the learned judges in the 1st and 5th districts to erroneous conclusions in the cases just referred to.

That the acknowledgment of a debt by one partner *after* a dissolution of the copartnership, is not sufficient to take the case out of the statute of limitations as to the other partners, was held by the supreme court of the United States in 1828, in the case of *Bell* v. *Morrison et al.* (1 *Pet.* 351. *See* 1 *Greenl. Ev.* § 112 *and notes.*) In this state a different rule prevailed for a long time, commencing with *Smith* v. *Ludlow,* (6 *John.* 267,) and followed up in *Johnson* v. *Beardslee,* (15 *Id.* 3 ;) *Patterson* v. *Choate,* (7 *Wend.* 441 ;) *Hopkins* v. *Banks,* (7 *Cowen,* 650 ;) *Roosevelt* v. *Mark,* (6 *John. Ch.* 291,) and *Dean* v. *Hewit,* (5 *Wend.* 262.) This doctrine was involved in *Van Keuren* v. *Parmelee,* (2 *Comst.* 523,) and the cases in the supreme court

Reid v. McNaughton.

to the contrary were thus directly repudiated by the court of appeals. It is not important to pursue this branch of the subject, because the present case does not fall within the principle discussed in those cases.

There is a difference between the acknowledgment of a debt and a promise to pay, by an oral declaration, and a partial payment of the debt itself; and especially when such payment is for interest. The payment of interest raises a conclusive presumption that there remains due a principal sum upon which that interest is computed. When the sum paid is expressed to by $14 for the interest for one year, as in the present case, it removes all doubt that a principal of $200 remains due. The leading case of *Whitcomb* v. *Whiting*, (*Doug*. 651,) was where a note was taken out of the operation of the statute, as against all the parties, by the payment by one of the joint makers of the interest and part of the principal. Payment by one, said Lord Mansfield, is payment by all; the one acting virtually as agent for the rest; and the law raises the promise to pay when the debt is admitted to be due. In *Hunt* v. *Bridgham*, (2 *Pick*. 581,) the supreme court of Massachusetts held that a partial payment made on a note by the principal promissor took the debt out of the statute of limitations, as to the surety. In that case the payment was made after the statute had attached, and it was a payment *generally* on the note, and not specifically of the interest. It was a case therefore, where the equity of the defendant was far stronger than in the principal case. It went farther than it is necessary to go in this case.

The case of *Wyatt* v. *Hodson*, (8 *Bing*. 309,) is exactly like the present case. It was an action on a promissory note which the defendant, as *surety*, had made jointly and severally with his brother, in November, 1824. The statute of limitations having been pleaded, the plaintiff proved payment of interest by the defendant's brother up to 1828. The action was brought in 1832. The payment was made by the principal, as in this case, before the statute had attached. The court held that the payment took the case out of the statute, as against the surety. Chief Justice Tindal, on giving the judgment of the court, re-

marks that the payment of principal or interest stands on a different footing from the making of promises, which are often rash or ill interpreted, while money is not usually paid without deliberation; and payment is an unequivocal act, so little liable to misconstruction as not to be open to the objection of an ordinary acknowledgment.

In *Burleigh* v. *Stott*, (8 *B. & C.* 36,) where the facts presented the same principle, the like decision was made. And see also to the same effect *Pease* v. *Hirst*, (10 *B. & C.* 122;) *Lane* v. *Doty*, (4 *Barb*, 530;) *Tracy* v. *Rathbun*, (3 *Id.* 543;) *Hammon* v. *Huntley*, (4 *Cowen*, 493;) *White* v. *Hale*, (3 *Pick.* 191;) *Frye* v. *Baker*, (4 *Id.* 382;) *Round* v. *Lathrop*, (4 *Conn. Rep.* 336;) *Channell* v. *Ditchburn*, (5 *M. & W.* 494.) In some of the foregoing cases a surety was charged by a part payment made by the principal debtor, and in others the same liability was created by a part payment after the statute had attached. This was the case in *Channell* v. *Ditchburn*, (5 *M. & W.* 494,) and *Manderton* v. *Robertson*, (4 *Man. & Ryl.* 440.)

The slight circumstances which had, in many cases, been held to avoid the statute of limitations, led to Lord Tenterden's act, (9 *Geo.* 4, *ch.* 14,) requiring a writing, in the case of a new promise or acknowledgment. But that statute left the effect of a partial payment untouched. (6 *Bac. Abr.* 403, *tit. Limitation of Actions. Coll. on Part.* 234.) The code of 1848, § 90, provided that when the time for commencing an action arising on contract shall have expired, the cause of action shall not be deemed revived by an acknowledgment or new promise, unless the same be in writing, subscribed by the party to be charged. This section was superseded in the code of 1849 by § 90, in this form: "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby; *but this section shall not alter the effect of any payment of principal or interest.*" Here is an express legislative recognition of the safety with which we may repose upon an act of par-

tial payment, to remove the bar interposed by the statute to the remedy.

The cases are not entirely uniform as to the *manner* in which the statute operates. If its operation be, as intimated by Judge Story in *Bell* v. *Morrison,* (1 *Peters,* 374,) to *extinguish* the debt, nothing short of a new promise founded on an adequate consideration would uphold an action to recover it. But the supreme court of the United States has never gone to that extent. Thus, in *Wetzell* v. *Bernard,* (11 *Wheat.* 309, 315,) recognized as sound law by Judge Story in *Bell* v. *Morrison,* Ch. J. Marshall concedes that an unqualified and unconditional acknowledgment of the present existence of the debt will *revive* the original cause of action. See also *Clementson* v. *Williams,* (8 *Cr.* 72.) It was put upon a similar ground by the supreme court of this state in *Dean* v. *Hewit,* (5 *Wend.* 257,) where a negotiable note, revived by a new promise, was held to be transferable and an action maintainable in the name of the indorsee. The court treated the new promise as a continuation of the old promise. They viewed the statute of limitations as affecting only the remedy; thus leaving the original debt in other respects unaffected. This is the view taken of the subject in this state and in England. (*See* 4 *Barb.* 538.) The mode of pleading has always been in conformity to this view, both in this country and in England. It has never been required of the plaintiff to declare on the new promise. The declaration was always framed on the original demand, and if the statute was pleaded, the new promise was replied. See the precedents, *passim.* In this state it was well settled, before the code, that the unconditional acknowledgment of the present existence of the debt is enough to revive and continue in force a debt upon which the statute has attached. (*Sands* v. *Gelston,* 15 *John.* 511. *Allen* v. *Webster,* 15 *Wend.* 284.) Such acknowledgment must now be in writing. Whether from such acknowledgment a promise to pay be presumed, according to the New-York cases, or whether from such acknowledgment the protection of the statute be waived, as was intimated in *Round* v. *Lathrop,* (4 *Conn. R.* 338,) is im-

material. It is well settled that a party may waive a statute which was made for his advantage.

It cannot be denied that if *Whitcomb* v. *Whiting* and *Wyatt* v. *Hodson*, and a host of other cases cited, be law, the judgment at the circuit should be affirmed. Feeling the force of this, the counsel call our attention to *Bland* v. *Haslerig*, (2 *Vent.* 151,) decided in 2 W. & M. (1690,) as in conflict with *Whitcomb* v. *Whiting*, and being a decision before the revolution, of greater authority than that case. But the case of *Bland* v. *Haslerig*, affords no countenance to that position. That case was a joint action against four; the plea the statute of limitations; and a verdict that *one* of the defendants did assume within six years, and that the others did not. It was held that on such a finding the plaintiff was not entitled to judgment against either defendant. For as the plea was joint, and the replication alleged a joint undertaking, the verdict did not find what the plaintiff was bound to prove. According to the principles of *Whitcomb* v. *Whiting*, the jury should have considered the promise of one as the promise of all, and therefore should have found a general verdict against all. A similar objection to the verdict, as has been before intimated, exists in *Van Keuren* v. *Parmelee*, (*supra.*)

The case of *Whitcomb* v. *Whiting* has been uniformly followed in England and in this state, and as far as I know, has never been questioned except by the learned judge who delivered the opinion of the court in *Van Keuren* v. *Parmelee*. It was affirmed in England in *Pelham* v. *Raynal*, (2 *Bing.* 306;) *Burleigh* v. *Scott*, (8 *B. & C.* 36;) *Clippendale* v. *Thurston*, (4 *C. & P.* 98;) and in *Pease* v. *Hirst*, (10 *B. & C.* 122.) The case of *Atkins* v. *Tredgood*, (2 *B. &. C.* 23,) and *Slater* v. *Lawson*, (1 *B. & Adol.* 396,) do not impugn its authority, but rather confirm it. Death had severed, in those cases, the joint interest of the parties, and revoked the agency, as was held by this court in *Lane* v. *Doty*, (4 *Barb.* 530.) The distinct recognition of *Whitcomb* v. *Whiting* as an authority will be found in more than a hundred reported cases in our reports, extending through a period of more than half a century. It has been shown that *Van Keuren* v. *Parmelee* is essentially different from this

Reid *v.* McNaughton.

case, and does not furnish a precedent by which it can be decided. The remarks therefore of the learned judge, in delivering the judgment of the court of appeals in that case, impugning the doctrine that joint debtors are agents for each other in making payments and acknowledgments, are not binding upon that court, nor are authority by which we are controlled. If a joint debtor be an agent for his companion, to make payments, as it seems to be generally agreed that he is, and if the effect of such payment be to recognize the present existence of the remaining part of the debt, the law raises the promise from such recognition. One debtor does not promise for his companion, but he does an act as his agent, and within the scope of his authority, from which the law concludes them both.

The principle that each joint debtor, while the liability continues, is the agent for his companion, to make payments, does not rest upon the case of *Whitcomb* v. *Whiting,* alone. It has been repeatedly affirmed by eminent judges, in distinct terms. See *Burleigh* v. *Stott,* (8 *B. & C.* 36,) and various other cases already cited. The payment by one enures to the benefit of the other. A release to one would discharge the debt as to both. (*Bac. Abr. tit. Obligation D.*) While the original debtors are living, there is a privity between them. This privity is destroyed by the death of either party, and the agency is revoked. *Lane* v. *Doty, Atkins* v. *Tredgold* and *Slater* v. *Lawson* were decided upon this distinction. They in effect, concede that during the life of the original parties, each joint debtor is the agent for his associate, to make payment. And the common law declares the effect of the payment of a part of a debt. (2 *Greenl. Ev.* § 444, *and the cases already cited.*) It is to continue the liability of all the parties from the time of the payment. The code does not confine the effect of this payment to the party making it, but leaves the case as at common law. I have never been able to discover any hardship or absurdity in the rule. *See Angel on Limitations, chap.* 23 *p.* 270, *et seq.* where the cases are reviewed.

Bronson, Ch. J, in his learned opinion in *Van Keuren* v. *Parmelee,* denies that co-obligors are in any sense the agents for

each other, so as to make admissions that will take the case out of the statute of limitations. (2 *Comst.* 528.) In this he follows Judge Story in *Bell* v. *Morrison*, (1 *Peters*, 368.) Judge Story admits, however, that one of two or more joint debtors has authority, before the debt is barred, to discharge it by payment; and if the payment is rightly made, the party paying has his remedy for contribution against his companions. But he denies that an authority to discharge, affords evidence of a virtual agency to charge. This concession surrenders the whole argument. If one joint debtor has authority to discharge in *toto*, he necessarily has authority to discharge in *part*. The consequence of a full payment is a total discharge of the debt and the creation of a claim to contribution. A partial payment, on the other hand, extinguishes only the part paid, and operates as a conclusive presumption that the remainder is still due. If one has authority to pay in part, he has authority to do an act from which the law raises the promise to pay the balance. This is all the effect of the agency which was claimed in this case.

With regard to partners, it has never been denied that during the continuance of the partnership, one partner has a right to make admissions and to do acts, in reference to the partnership affairs, by which all are bound. This is one of the incidents of that relation, and springs from their community of interest. Payment to one partner is payment to both. (*Coll. on Part.* 379. 3 *Moore and Payne*, 555.) Notice to one binds the whole. (*Mayhew* v. *Eames*, 1 *C. & P.* 550. 1 *M. & S.* 259. *Powell* v. *Waters*, 8 *Cowen*, 670. 2 *Hill*, 451. 5 *Id.* 101. 6 *Id.* 318. 4 *Paige*, 127. 3 *Barb.* 529.) A release by one of several joint obligees is binding upon all, upon this same principle of agency. (*Bac. Abr. title Obligation D., supra.*)

The same principle applies between joint makers of a note, who are not partners. With respect to that transaction they are treated as partners, and subject to all the consequences of that relation. (*Douglass*, 653, *note. Coll. on Part.* 239.) The act relative to proceedings against joint debtors treats them as partners *quoad hoc.* (2 *R. S.* 377. *Code,* § 136.) And this partnership continues until the debt is paid. And hence the

Reid v. McNaughton.

case of joint debtors is not within the case of *Van Keuren* v. *Parmelee*, (2 *Comst.* 526.) (1.) because a *part* payment rests on different principles from a bare acknowledgment; and (2.) because this part payment was not made *after* a dissolution of the assumed partnership.

The result of this opinion is, that the payment of interest by Crary, before the statute of limitations had run, continued not only his liability but that of McNaughton, upon the note, for six years from the time of such payment. I do not express any opinion on the effect of a partial payment by one, *after* the statute has attached, the point not being involved in this case. Nor do I express any opinion on a collusive payment, or a small sum paid in fraud of the other joint maker. There was no pretense that the present was not a fair payment, made in the ordinary course of business. The case is not controlled by *Van Keuren* v. *Parmelee*, but is distinguishable from it.

I think the judgment should be affirmed.

HAND, J. Payment of part of the principal, or interest, is evidence to take a debt out of the statute of limitations. This was so in England before Lord Tenterden's act, (9 *Geo.* 4, *ch.* 14,) and is so since, and has always been so, in this state. (*Smith* v. *Ludlow*, 6 *John.* 267. *Wenman* v. *Mohawk Ins. Co.*, 13 *Wend.* 267. *Arnold* v. *Downing*, 11 *Barb.* 554. *Carshore* v. *Huyck*, 6 *Barb.* 583. *Ang. on Lim. ch.* 22. 1 *Smith's Lead. Cas.* 318, *and notes.* 2 *Saund.* 64, *n. b.*)

The important question in the case now under consideration, is, whether part payment by one joint and several maker or contractor will have the like effect as to all of them. This point was perfectly well settled in the affirmative, in this state, before the case of *Van Keuren* v. *Parmelee*, (2 *Comst.* 526) In that case it was decided that a promise made long after the dissolution of a firm, and by one of the copartners, after the statute had attached, would not revive a debt contracted by the firm, against the other members. Judge Bronson, in delivering the opinion, although he admitted it was distinguishable from a payment, did not confine himself to the case of a mere promise, but in his

HARVARD LAW SCHOOL LIBRARY N.Y.

Reid *v.* McNaughton.

argument attacked *Whitcomb* v. *Whiting*, (2 *Doug.* 652.) In the subsequent case of *Bogert* v. *Vermilya*, (10 *Barb.* 32,) this court in the first district felt so far bound by the case of *Van Keuren v. Parmelee*, that they refused to give effect to a part payment by one co-debtor, made, (as I understand the statement,) after the statute had run. And the fifth district has gone one step farther, and held that payments by one maker of a note, before the statute had attached, were insufficient to continue the liability of the other makers. (*Dunham* v. *Dodge, Id.* 566.) The justice who delivered the opinion admitted that the law was well settled the other way, by authority, before *Van Keuren* v. *Parmelee*. With unfeigned respect for the judge who delivered the opinion in the case last named, and for the justices of the first and fifth districts, I am constrained to say, that as to the effect of payment, the opinion in *Van Keuren* v. *Parmelee* was entirely *obiter*, and consequently I do not feel authorized to follow *Bogert* v. *Vermilya* and *Dunham* v. *Dodge ;* contrary to the well settled law of this state repeatedly declared in this court. I have had occasion to express rather liberal views, perhaps, upon the doctrine of *stare decisis*, (2 *Denio*, 389,) but I cannot consent to follow mere OBITER DICTA, if they tend to overturn the established law of the land. It is not to be denied, that part payment, and even a new promise, before the case in the court of appeals, was evidence to take the debt out of the statute. This principle was perfectly well settled, and has been held to extend to admissions made after the statute had run. (*Smith* v. *Ludlow*, 6 *John.* 267. *Johnson* v. *Beardslee*, 15 *Id.* 3. *Hammon* v. *Huntley*, 4 *Cow.* 494. *Dean* v. *Hewitt*, 5 *Wend.* 257. *Patterson* v. *Choate*, 7 *Id.* 441. *Stilwell* v. *Hausbrouck*, 1 *Hill*, 561. *Tracy* v. *Rathbun*, 3 *Barb. S. C. R.* 543. *Lane* v. *Doty*, 4 *Id.* 530. *Watkins* v. *Stevens, Id.* 168.) The rule has prevailed in England, certainly since *Whitcomb* v. *Whiting*, decided in 1781, and before and after Lord Tenterden's act, before and after the statute had attached, and against sureties. (*Perham* v. *Raynal*, 2 *Bing.* 306. *Burleigh* v. *Stott*, 8 *B. & C.* 36. *Bradford* v. *Tupper*, 7 *Eng. L. & Eq.* 541. *Perry* v. *Jackson*, 4 *T. R.* 516. *Wy-*

Reid *v.* McNaughton.

*att* v. *Hodson,* 8 *Bing.* 309. *Rew* v. *Pettet,* 1 *A. & E.* 196. *Pease* v. *Hirst,* 10 *B. & C.* 122. *Goddard* v. *Ingraham,* 3 *Q. B.* 839. *Channel* v. *Ditchburn,* 5 *M. & W.* 494. *Chippendale* v. *Thurston, M. & M.* 411. 2 *Saund. R.* 64, *note b.* 1 *Smith's Lead. Cas. notes to Whitcomb* v. *Whiting.*) In *Bell* v. *Morrison,* (1 *Peters,* 351,) Mr. J. Story denied this rule, but as I understand his opinion, not enough was shown to make any of the partners liable, and the case arose in Kentucky, and was governed by the laws of that state. A part of his opinion has been approved by this court, but not that now under consideration. He cited no English authority against *Whitcomb* v. *Whiting,* but thought Lord Kenyon in *Clark* v. *Bradshaw,* (3 *Esp.* 155,) and Lord Ellenborough in *Brandram* v. *Wharton,* (1 *B. & Ald.* 463,) had expressed some doubts. Those judges, as I understand their remarks in those cases, explicitly acknowledged the authority of *Whitcomb* v. *Whiting.* The first was decided in 1800 and the other in 1818, and *Bell* v. *Morrison* in 1828 ; and it is a little remarkable that in the last named case, no notice was taken of *Perham* v. *Raynal,* decided in 1824, which, upon a review of the doctrine upon principle and authority, not only fully approved *Whitcomb* v. *Whiting,* but extended the rule to a mere acknowledgment, and against a surety.

The decision in *Van Keuren* v. *Parmelee,* so far as the points decided properly arose in the case, of course is binding upon this court. But it was not a case of part payment, which perhaps has been considered as standing upon firmer ground ; and has been excepted from the operation of the new statute. (*Code,* § 110.) If we thought the great array of authorities unsound in principle, still we should not feel authorized to go beyond the case in the court of appeals. It is admitted that case wrought a great change in this state in the law of contracts, and many debts may have been lost to the creditor, by overruling an unbroken current of published decisions on the subject, in our own courts, covering a period of about forty years, and indeed overruling all the decisions in our own courts and in England. With all respect, this seems very like judicial legislation. And we are almost tempted to exclaim in the language of a very learned and

Reid *v.* McNaughton.

able judge, in respect to another decision, "that this avowed de-
parture from the law as it had been previously settled, has made
a precedent of 'paramount authority,' I most respectfully deny."
(1 *Hill,* 452.) I believe both decisions produced some surprise.
Whether the former rule was put on the ground of original
contract, agency, or community of interest, was of no importance
if such was the law when the agreement was made. The pay-
ment of the debt is a common duty, and payment by one is
payment by all. And certainly payment before the statute has
attached, exonerates all from a legal obligation, to that extent, and
is doing no more than to perform a legal as well as moral duty
which they then could be compelled to perform. An acknowledg-
ment by one co-contractor, after the statute has attached, since
the decision in the court of appeals, is not sufficient. Whether
an acknowledgment before, or part payment after, would be, is
not the question now before the court. Notwithstanding the
statute, the demand remains in existence, and a clear recognition
of that existence restores the remedy. It does not create a new
debt, but continues the old one. (*Dean* v. *Hewit,* 5 *Wend.*
257. *Soulden* v. *Van Rensselaer,* 9 *Id.* 297. *Wait* v. *Morris,*
6 *Id.* 394. *Watkins* v. *Stevens,* 4 *Barb.* 168. *Quantock* v.
*England,* 5 *Burr.* 2630. *Perham* v. *Raynal, supra.*) In
this state, and in England even before Lord Tenterden's act, a
mere admission that the debt was valid in its origin was not
sufficient. And if the acknowledgment was accompanied by any
protestation against paying the debt, it was insufficient. But
from a clear recognition of an existing debt—a general and un-
qualified acknowledgment—when nothing is said to prevent it, a
general promise to pay ought to be inferred. (*Sands* v. *Gels-
ton,* 15 *John.* 518. *Stafford* v. *Richardson,* 15 *Wend.* 302.
*Allen* v. *Webster, Id.* 284. *Fearn* v. *Lewis,* 6 *Bing.* 349.
*Tanner* v. *Smart,* 6 *B. & C.* 603. *Ang. on Lim. ch.* 20. 2
*Saund.* 64, *n. c,* 6*th ed.*) The power of one partner to create a
debt against the copartnership, after dissolution, is quite another
matter. By acknowledgment, the co-debtor does not create a
new obligation ; he only restores the remedy, and such only
would be the effect, if it bound a co-contractor. The declaration

is upon the old contract, except on a promise by executor or assignee. And admissions to a stranger are sufficient, certainly as against himself. (*Watkins* v. *Stevens, supra, and cases there cited. McCrea* v. *Purmort,* 16 *Wend.* 477. *Depuy* v. *Swart,* 3 *Id.* 135. *Stafford* v. *Bacon,* 1 *Hill,* 534. *Soulden* v. *Van Rensselaer,* 9 *Id.* 297. *Wait* v. *Morris,* 6 *Id.* 394.) The statute does not extinguish the debt or the right; and it is optional with the defendant whether in pleading he will waive it or not. (*Higgins* v. *Scott,* (2 *B. & Ad.* 413. 1 *Saund. R.* 283, n. 2. *And see Bal. on Lim.* 17, *notes ;* 2 *Toml. Dic.* 461.) The case of *Bland* v. *Hazlerig,* (2 *Vent.* 150,) where there was a verdict against one of four defendants on a plea of the statute, has been explained on the ground that no judgment could be entered for the plaintiff on such a verdict. Mr. Viner, who wrote long before *Whitcomb* v. *Whiting,* puts the case under the head of " Trial ;" and I believe does not mention it in any other part of his work. (21 *Vin.* 432.) Indeed, if all are not liable, there might be difficulty in obtaining judgment on a contract merely joint, after the statute had once run, against one who had promised within six years ; for if he only should be sued, to say nothing of a variance, he could plead nonjoinder ; and if all should be sued and a verdict rendered only against him promising, the plaintiff would fail against all, within the principle of *Bland* v. *Hazlerig. See* 1 *Chit. Pl.* 34, 5 ; *Robertson* v. *Smith,* 18 *John.* 459 ; *Hall* v. *Rochester,* 3 *Cow.* 374.) And this shows the propriety of the decision in *Whitcomb* v *Whiting.* Lord Tenterden's act provides for this ; whether the code does so, it is not necessary now to determine. In many cases, even in trespass, where a joint liability exists, by well established rules of evidence, the admissions of one are competent evidence against his co-defendants. However, complete homage must be paid to the decision of the court of appeals on the point before them, and the effect of the mere admission or promise of one co-contractor after the statute has attached, is no longer an open question in this court.

The code is not applicable to this case ; for that has not altered the law as to payments ; and beside, the right of action accrued

before it was passed. (*Code,* §§ 73, 110.) It has been held it applied where the promise was after the code and after the statute had run. (*Wadsworth* v. *Thomas,* 7 *Barb.* 445.) With all respect I have doubts as to the correctness of that decision. (2 *R. S.* 30, § 45. *Van Rensselaer* v. *Livingston,* 12 *Wend.* 490. *Sayre* v. *Wisner,* 8 *Id.* 661. *McCormick* v. *Barnum,* 10 *Id.* 104. *Huntington* v. *Brinckerhoff, Id.* 278. *Millard* v. *Whittaker,* 5 *Hill,* 408. *Johnson* v. *Burrell,* 2 *Id.* 238. *Cole* v. *Irvine,* 6 *Id.* 634. *Van Hook* v. *Whitlock,* 3 *Paige,* 409. *Didier* v. *Davison,* 2 *Barb. Ch.* 477. *Carshore* v. *Huyck,* 6 *Barb.* 583. *Williamson* v. *Field,* 2 *Sandf. Ch.* 533. *Austin* v. *Tompkins,* 3 *Sandf. S. C. R.* 22. 1 *Denio,* 128. 7 *John.* 477.) If the old debt is not extinguished and the suit is upon that, the right of action within the meaning of the act accrued as soon as a suit could have been brought, and has never accrued twice.

But it is sufficient that this is a case of part payment before the statute had attached. The judgment should be affirmed.

CADY, J. The complaint in substance is that on the 23d day of July, 1841, John Crary and the defendant made a note as follows :

"$200. For value received we jointly and severally promise to pay to the order of Daniel Reid, two hundred dollars with interest annually.    JOHN CRARY,

JOHN McNAUGHTON, surety."

That the interest upon said note, up to July 23d, 1845, has been annually paid and indorsed thereon, the last of which payments was made and indorsed thereon, October 14, 1845. That since the making of the note, both the said John Crary and the said Daniel Reid have deceased. That Daniel Reid, on or about the 16th day of November, 1842, made his will, and thereby bequeathed to Alexander Reid and John Reid the said note, and appointed them his executors, and that letters testamentary were granted to them. That on the 7th of October, 1845, John Reid assigned all his interest in the note to the plaintiff; that the note has not been paid ; and that the sum of $200 with interest from the 23d of July, 1845, is due thereon.

Reid *v.* McNaughton.

The defendant, in his answer, amongst other defenses, alleged that the supposed cause of action mentioned in the complaint, did not accrue to the plaintiff against the defendant at any time within six years next before the commencement of this action, in manner and form as the plaintiff hath alleged in his complaint. To that part of the answer the plaintiff replied, "That the cause of action mentioned in the complaint did accrue to the plaintiff against the defendant within six years next before the commencement of this action, in manner and form as alleged in the complaint. And further, that the defendant within six years last past, and on or about the fourteenth day of October, 1845, acknowledged the cause of action to be due and unpaid, and promised the owners and holders thereof to pay the same; and did also in the years 1846 and 1847 acknowledge the said note to be due and unpaid, and again promised to pay the same to the said Alexander and John Reid as executors and holders and owners of the same."

John Crary died in May, in the year 1848, and this action was commenced the 8th day of October, 1851, ten years two months and fifteen days after the right of action accrued on the note, and six years wanting six days after the last payment of interest. The cause was tried before a single judge, at the Washington circuit, in the year 1852. On the trial, the plaintiff offered to prove by George W. Harsha, that John Crary, one of the makers of the note, asked the witness to go with him to some moneyed man, to obtain money to pay Mr. Reid. This evidence was objected to by the defendant's counsel, and the objection was overruled and the evidence admitted, and the defendant's counsel excepted. The plaintiff then offered to prove by John Reid, that the said John Crary, on the 14th day of October, 1845, paid the interest on the note, up to the 23d day of July, 1845. The defendant's counsel objected to the evidence, on the ground that a payment by Mr. Crary was no evidence of a new promise by the defendant, and would not take the case out of the statute of limitations as to the defendant. The judge overruled the objection, and received the evidence, and the defendant's counsel excepted. After proving the death of

John Crary, and that the plaintiff was the owner of the note, and the sum due thereon, the plaintiff rested. The defendant then moved for a nonsuit, on the ground that payment by Crary was not evidence of a promise by the defendant. The judge denied the motion, and the defendant's counsel excepted, and the judge gave judgment in favor of the plaintiff for $292,12; from that judgment the defendant has appealed to this court, and the question now is, whether the judge erred in admitting the evidence objected to, or in refusing to nonsuit the plaintiff, or in giving judgment in his favor.

When the note was made, three express, and one implied, contracts were made thereby. John Crary and the defendant severally promised to pay to Daniel Reid $200 with annual interest, and they made a joint promise to the same effect, and the law implied a contract on the part of Mr. Crary to his surety, to pay the note, and save him harmless therefrom. The plaintiff was at liberty to sue each of the makers separately, or to sue them jointly; and each of the makers had a right in respect to his separate contract, to make any arrangement he pleased with the payee But the plaintiff claims that each of the makers of the note had authority to make a new contract, binding not only himself but his co-debtor to pay the note, and it is not apparent from the plaintiff's complaint, on which of the express contracts he seeks to recover; whether upon the several contract of the defendant or upon the joint contract of both the makers. He has alleged that the note was made by both, and that the interest was annually paid, but by whom he has not alleged. But from the plaintiff's reply, it may be inferred that he seeks to recover on the several contract of the defendant, for in that, as has already been stated, after having alleged that the cause of action against the defendant did accrue within six years next before the commencement of the action, and to show how the new cause of action arose, the plaintiff further alleged, that the defendant within six years last past, and on or about the 14th day of October, 1842, acknowledged the said cause of action to be due and unpaid, and promised the owners and holders thereof to pay the same; and did

Reid *v.* McNaughton.

also in the years 1846 and 1847, acknowledge the said note to be due and unpaid, and again promised to pay the same to the said Alexander and John Reid as executors," &c. It is certainly apparent from this reply that the plaintiff relied on the admissions and promises made by the defendant himself, to show that a cause of action accrued against the defendant, within six years next before the action was commenced; and it must be remembered that the admissions and promises alleged to have been made by the defendant, are alleged to have been made at a time when John Crary was living.

On the trial there was no evidence given, or offered, to show that the defendant had ever seen the note, or said a word or done an act respecting it, after it was made and before the action was commenced; but instead of that, the plaintiff offered to prove by George W. Harsha that John Crary asked him to go with him to some moneyed man, to borrow money to pay Reid. This was objected to, the evidence admitted, and the defendant excepted on the ground that it did not tend to prove a promise by the defendant. The plaintiff then offered to prove that John Crary paid the interest on the note annually, and that the last payment was paid and indorsed on the note, on the 14th of October, 1845. This was objected to, the evidence admitted and the defendant excepted, because it did not prove a promise by the defendant as alleged in the reply.

The plaintiff, by section 153 of the code, was allowed to allege in his reply, " any new matter, not inconsistent with the complaint, constituting a defense to such new matter in the answer." And what new matter did the plaintiff allege in his reply? Two admissions and two promises made by the defendant, in the years 1845, 1846 and 1847, and seeks to prove that the defendant made the admissions and the promises alleged, by evidence that John Crary paid the interest on the note for four years in succession. And did that evidence prove the admissions and promises alleged in the reply? If the plaintiff intended to rely upon the fact that John Crary paid the interest, as a defense against the matter alleged in the answer, he ought to have alleged that fact in his reply, or he ought to have alleged

a promise by both the makers, and proved the payment made by Mr. Crary as evidence of a promise made by both, for surely a payment made by Mr. Crary cannot be evidence of a several promise made by the defendant.

I am inclined to the opinion that the evidence offered by the plaintiff was inadmissible under the issue between the parties, and did not prove the matter alleged in the reply, and therefore that the plaintiff ought to have been nonsuited. This view of the case does not appear to have been very distinctly taken at the circuit, nor was it much urged upon the argument before this court. Upon that argument, the defendant's counsel relied, principally, upon what he regarded as a settled rule of law, that one joint debtor could make no admission or promise, nor do any act which would take a case out of the statute of limitations as to his co-debtor. It cannot be claimed on either side, that the decisions of the courts, in respect to the statute of limitations, have been uniform. At times it has been regarded as a beneficial statute, at other periods it has been viewed as working great injustice, by subjecting an honest creditor to the loss of a large sum, in consequence of having indulged a debtor more than six years, and any slight admissions have sometimes been deemed sufficient to take the case out of the statute; and no man can hope to reconcile the conflicting decisions which have been made respecting the application of the statute of limitations, as to actions founded on contract.

Before referring to any cases, it may be well to examine the statute itself, to ascertain what construction ought to be put upon it. 2 R. S. 295, sec. 18, is as follows: "The following actions *shall be commenced* within six years next after the cause of such action *accrued, and not after.*" Among the actions enumerated in that section, are actions for trespass on lands, actions of replevin, actions for libels and actions of assumpsit. It has at no period been held by any court, that an admission · by a person that he had committed a trespass on another's land, or published a libel, would take the case out of the statute of limitations, and enable the injured party to maintain an action, ten years after the trespass on land was committed, the goods taken,

Reid *v.* McNaughton.

or the libel published. Why? Because the admission that a person had felled the trees of his neighbor, taken his goods, or libeled him, gives no new cause of action; the admission in such cases is not a repetition of the injury. A person gives to his neighbor a promissory note for $100, and on the same day publishes a libel of the same neighbor. At the end of five years, eleven months and twenty-five days, the payee of the note, and the person libeled, takes a witness with him and goes to the maker of the note and shows him the note, and asks him, Sir, did you make this note? Yes. Have you ever paid it? No. Are you willing to pay me a dollar towards the interest? Yes. And the dollar is paid and indorsed on the note. He then shows him the libel, and asks, did you publish that libel of me? I did, sir. Have you ever paid me any thing for the injury done to me by that publication? I have not. Are you now willing to pay me a dollar in part compensation of that injury? I am, and here is the dollar; which the injured man receives and gives a receipt for it. The payee named in the note and the person libeled, waits another five years, and then commences an action on the note, and another on the libel. In the action on the note he will succeed; but be defeated in his action for the publication of the libel. Why? The admissions as to the libel were as full and complete as were the confessions as to the note; and why should they not enable the injured party to recover in one action as well as in the other? The only answer must be, that as to the note, the courts have held that the admission was evidence of a *new* promise, that when the admission was made, a new cause of action accrued; but as to the libel, the admissions were not evidence of a new publication of the libel, and did not therefore give a new cause of action. If the effect of an admission was to continue the old cause of action, its operation would be as effectual in an action for a libel as in an action on a promissory note, and the court must have been much inclined to evade the statute of limitations, when it was first decided that an admission that a note was unpaid was evidence of a promise to pay it; and that by a promise thus proved a new cause of action accrued. In *Bell v.*

*Morrison,* (1 *Peters,* 351,) Justice Story, in giving the opinion of the supreme court of the United States, discusses with much force and clearness, questions in relation to the statute of limitations. In that case the inquiry was, what effect was to be given to the admissions and declarations of one partner, after the dissolution of the partnership; and at page 370, he says: " The question is not, however, as to the authority of a partner, after the dissolution, to adjust an admitted and subsisting debt, we mean admitted by the whole partnership, or unbarred by the statute, but whether he can by his sole act, after the action is barred by lapse of time, revive it against all the partners, without any new authority communicated to him for this purpose. We think the proper resolution of this point depends on another, that is, whether the acknowledgment or promise is to be deemed a mere continuation of the original promise, or a new contract springing out of and supported by the original consideration. We think it is the latter, both upon principle and authority; and if so, as after the dissolution, no one partner can create a new contract, binding upon the others; his acknowledgment is inoperative and void, as to them." And on page 371, he says: " What, indeed, would seem to be decisive on this subject is, that the new promise, if qualified or conditional, restrains the rights of the party to its own terms; and if he cannot recover by those terms, he cannot recover at all. If a person promise to pay, upon condition that the other do an act, performance must be shown, before any title accrues. If the declaration lays a promise by or to an intestate, proof of the acknowledgment of the debt, by or to his personal representatives, will not maintain the writ; why not, since it establishes the continued existence of the debt? The plain reason is, that the promise is a new one, by or to the administrator himself, upon the original consideration, and not a revival of the original promise. So, if a man promise to pay a pre-existing debt, barred by the statute, when he is able, or at a future day, his ability must be shown, or the time must be passed, before the action can be maintained; why? Because it rests on the new promise, and its terms must be complied with." This argument was urged by

Reid *v.* McNaughton.

Justice Story, in an action against partners, who, while the partnership continued, had power to make contracts binding on each other ; but in this case, a debtor and his surety, who never previously had authority to make contracts binding on each other, joined in making a joint and several promissory note, and the question is, whether the defendant, by signing the note as surety for John Crary, delegated to him authority to make new contracts in respect to that note, binding on the defendant ? When the defendant signed the note, a cause of action accrued against him, in favor of the payee named in the note, on which an action might have been commenced at any time within six years, and *not after.*"

The plaintiff now insists that John Crary, the principal debtor, had, on the 14th day of October, 1845, authority to make, and did make a new contract, by which a new cause of action accrued against the defendant, and in favor of the then holder of that note, to recover from him the amount due upon the note, at any time within six years thereafter, and the plaintiff must fail in his action, unless he can show that John Crary had such authority, and that by paying interest on the note, he had made such *new* contract, which bound the defendant, and gave the plaintiff a *new* cause of action against the defendant.    There are many adjudged cases, which go to sustain the claim of the plaintiff, and others that show that the claim cannot and ought not to prevail.    How came John Crary, by authority, to make a *new* contract in October, 1845, securing to the then holders of this note a right to sue the defendant at any time within six years thereafter ?    Suppose John Crary, on the 14th day of October, 1845, had written as follows, on the back of this note : " I, John Crary, for myself and for my surety, John McNaughton, agree that the within note has not been paid, and that we and each of us will pay the same at any time within six years from this date," and signed his name to it ; he would thereby have bound himself, but I doubt whether any court would say that he thereby bound the defendant.    But will the fact that he on that day paid $14, for the arrears of interest on the note, be legal evidence of a valid contract precisely like the one above

supposed? If he had no authority to make an express contract to that effect, binding on the defendant, the law would not imply such contract from any act which he could do. It will be difficult, I think, to find a case where the law has implied a contract from the act of a party who had no right to make the contract implied.

What reason has been assigned for holding that payment by one joint debtor, created a new cause of action against the others? The only reason assigned is, that each is agent for the other in making payments. In *Whitcomb* v. *Whiting*, (*Doug. Rep.* 652,) Lord Mansfield and his associates held that part payment within six years, by one of four joint and several makers of a promissory note, took the case out of the statute of limitations as to all of the makers. In *Van Keuren* v. *Parmelee*, (2 *Comst.* 527,) Justice Bronson, in giving the opinion of the court of appeals, referred to *Whitcomb* v. *Whiting*, and cited the following part of the opinion of Lord Mansfield : " Payment by one is payment for all ; the one acting virtually as agent for the rest. And in the same manner, an admission by one, is an admission by all ; and the law raises a promise to pay, when the debt is admitted to be due." And then Justice Bronson added : " Nothing but the great name of Lord Mansfield could have given currency to this reasoning. It is plain enough that ' payment by one is payment for all,' so far as relates to the satisfaction of the debt ; but that fact neither shows, nor has it any tendency to show, a new promise or acknowledgment by the other joint debtors. Payment is nothing more than an admission that the debt is due ; and like any other admission, it can only affect the party who makes it, unless he has authority to speak for others, as well as himself."

If there be debts due from a copartnership at the time of its dissolution, the partners remain joint and several debtors. In *Bell* v. *Morrison*, (1 *Peters*, 373,) Justice Story, said : " The light in which we are disposed to consider this question is, that after a dissolution of a copartnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that purpose."

I shall not spend time in collecting the cases which have been decided on the authority of *Whitcomb* v. *Whiting ;* nor those in which that case has been disregarded ; as I believe the court of appeals, in *Van Keuren* v. *Parmelee,* intentionally overruled the opinion of Lord Mansfield in that case, and all the other cases resting on that. *Dunham* v. *Dodge,* (10 *Barb.* 566,) was a case like this, and decided in favor of the defendant. I am therefore of opinion that the motion for a new trial should be granted.

Judgment affirmed.

[Washington General Term, May 2, 1853. *Willard, Hand,* and *Cady* Justices.]