WINCHELL, Executor, *v.* HICKS *et al.*

A joint and several promissory note, made by a principal and three sureties, became due before the Code. Five years afterwards, the holder, calling upon two of the sureties for payment, was referred by them to the principal, who was informed of such reference and made a payment : *Held,* such an acknowledgment of liability as to arrest the running of the statute of limitations against the two sureties.

Neither the acknowledgment nor the payment affects the right of the third surety, who took no part in the transaction.

A defendant moving, on the conclusion of the evidence, for a nonsuit, which is denied, if he desires that questions of fact be submitted to the jury, must distinctly request it, and cannot, upon appeal, make the point under a general exception to the judge's direction of a verdict, that there were questions of fact which should have been submitted.

APPEAL from the Supreme Court. Action on a joint and several promissory note, made by Bowman, Hicks, Kilmer and Tanner, commenced September 6, 1854. The note became due May 2, 1847. The answer set up the statute of limitations. Bowman died after issue joined and before trial. At the trial, before Mr. Justice ROCKWELL, at the Dutchess Circuit, it was admitted that the note was given

for money loaned to Bowman, and that he was principal and the other defendants sureties. The interest on the note was paid by Bowman annually, and indorsed up to May 4, 1850. The plaintiff, at some time between this date and May 3, 1852, called upon Hicks and Tanner, separately, for payment, demanding principal and interest, but being willing to forego the payment of principal if the interest should be paid. Hicks and Tanner referred him to Bowman for payment. The terms of the conversation, so far as they appear from the Case, are stated in the following opinion. The plaintiff communicated to Bowman what Hicks and Tanner said, and Bowman paid the interest, on May 3, 1852, up to that date. It did not appear what time elapsed between the application of the plaintiff to Hicks and Tanner for payment and his communication of what they said to Bowman, nor between the latter period and the payment by Bowman. The Case stated that " the defendants moved for a nonsuit for the reason that said note was barred by the statute of limitations. The judge granted a nonsuit as to Kilmer, but denied the motion as to Tanner and Hicks; to which decision, denying said motion, as to Tanner and Hicks, the counsel for said Tanner did then and there except." The judge directed a verdict against Tanner and Hicks, under exception by their counsel. The exceptions were ordered to be and were heard in the first instance at general term in the second district, where judgment was given for the plaintiff, and Tanner and Hicks appealed to this court.

*Nicholas Hill,* for the appellant.

*John H. Reynolds,* for the respondent

ALLEN, J. Since the decision of this court in the cases of *Van Keuren* v. *Parmelee* ( 2 *Comst.,* 527 ), *Shoemaker* v. *Benedict* ( 1 *Kern.,* 185 ), and I might add *Reed* v. *McNaugh-*

*ton*, reversing the decision of the Supreme Court, reported in 15 *Barbour*, 168, the following propositions in relation to a defence arising under the statute of limitations, may be considered as established :

1. That the action must be sustained upon the new promise, though the original contract is the cause of action, and the complaint counts upon that as the ground of recovery.

2. That to revive or renew the debt there must be either an express promise to pay, or an acknowledgment of its existence, from which a new promise may be implied.

3. That this acknowledgment or promise must be made by the party to be charged, or by his authorized agent; and,

4. That there is no mutual agency between joint debtors, by reason of their joint contract, which will authorize one to act for and bind the others, so as to vary their liability.

It was supposed, until the two latter cases, that there might be some distinction in principle between payments or promises made before and those made after the statute had attached; some stress having been laid upon the fact in the case of *Van Keuren* v. *Parmelee*, that the promise was made after the demand had been barred by the operation of the statute. Indeed, the learned judge who delivered the opinion of the court in that case, endeavored to distinguish it somewhat from the case of *Whitcomb* v. *Whiting*, by remarking that the action, in the latter case, was not barred prior to the payment. But in *Shoemaker* v. *Benedict*, the point was directly before the court and it was adjudicated,

First. That partial payments, such as exist in this present case, are only evidence of a new promise, or from which one may be implied.

Secondly. That one joint debtor cannot, by such payment, indirectly bind his co-debtors, when he could not directly do so by an express contract; and,

Thirdly. That it is immaterial whether such payment is made before or after the statute has attached; that in neither

case is it binding upon any but the several debtor, where the debt is joint and several, and as to the rest the statute is a bar.

In *Reed* v. *McNaughton* (15 *Barb.*, 168), the Supreme Court decided that the payment of interest by one of two makers of a joint and several promissory note, before the statute of limitations has attached, will take the case out of the statute as to both makers, and continue the liability of each upon the note for six years from the time of such payment. But this court, on appeal, reversed that judgment, following the decision already made in *Shoemaker* v. *Benedict*, which affirmed and adopted the opinion of the Supreme Court in the case of *Dunham* v. *Dodge* (10 *Barb.*, 566). Thus it will be seen that the payment of the interest by Bowman does not aid the plaintiff in establishing his right of recovery against the appellants, as the case so far is precisely like that of *Reed* v. *McNaughton* and *Shoemaker* v. *Benedict.*

The question then is, whether there is any direct recognition of the debt, or of the agency of Bowman, who made the payment by the other defendants. The note was for the sum of $400, and dated on the 29th of April, 1846; it was made by Bowman as principal, and Hicks, Kilmer and Tanner as sureties. There were several indorsements of interest upon it, one bearing date 2d of May, 1848, for $55; another of the date of 30th of April, 1849, for $28; a third of the date of 4th of May, 1850, for $28, and a fourth bearing date 3d of May, 1852, for $55.

The note belonged to the estate of Martin Lawrence, deceased, and a witness testified that after Lawrence's death in 1851, he had an agency under his executors to take charge of the business of his estate; that. he received the interest upon the notes, and that the three last payments indorsed upon the note in question were made by Bowman to him, the witness, at the time they bear date. After the payment of the 4th of May, 1850, and before the date of the last indorsement, the witness called upon Tanner and

Hicks separately. In his interview with Tanner he told him the interest was not paid on the note, and demanded ·˙principal and interest both; interest any how, and principal and interest if interest was not paid. Tanner requested him to see *Bowman*, and urge him to pay the interest. He wanted he should insist to Bowman on his paying the interest. He said as long as he could keep it along by Bowman paying the interest, he made a good bargain, and if he had eventually to pay the principal, it would not be very hard — he should not feel very bad, and would not be much the loser, as he had a good deal of business with him." The witness also saw Hicks, and said to him as he did to Tanner, that he wanted the interest on the note. He did not recollect particularly what reply Hicks made, but the substance of it was "that he must get it out of Bowman." The witness informed Bowman what they said, and he paid the interest. It did not appear distinctly at what time these conversations were had, but the fair probability is that they were after the spring of 1851, as the witness testified it was after interest became due, and by the indorsement of May, 1850, it was paid up to that date. The witness swore it was between the dates of the two last indorsements. The precise day or time is not ˙very material. It is sufficient that, so far as Tanner is concerned, there was an express recognition—an unqualified and subsisting admission of the debt, and of his present liability and willingness to pay it; and this too, at a time when he was under just as much of a legal obligation to pay, so far as the creditor was concerned, as Bowman. Nay, more, it was an express direction to the witness to request Bowman to pay that which could have been and probably would have been, but for the direction, collected of himself—a request which, if complied with, as it was in part by the payment of interest, would enure to his benefit, and, to use his own words, "if he had eventually to pay the principal it would not be very hard," and he "would not be much the loser." It was

as well remarked in the opinion of the court below, a recognition by him of the agency of his joint contractor. This request was communicated to Bowman, and he paid the interest accordingly. Under such circumstances the act of Bowman in making the last payment was his act, enured to his benefit, and attached to him all its consequences.

But it is insisted by the defendants' counsel, that if the court should hold the evidence sufficient to bind Tanner, that the judge erred in directing a verdict against Hicks. It is objected in the first place, in answer to this position, that if the judgment is affirmed as to Tanner it must also be affirmed as to Hicks, because the exceptions are only joint exceptions by both, and not several as to each, and are, therefore, indivisible. The Case states that the defendants moved for a nonsuit for the reason that the note was barred by the statute of limitations. The justice granted a nonsuit as to Kilmer, but denied the motion as to Tanner and Hicks, to which decision the counsel for Tanner and Hicks excepted. It would seem from this that the motion was made as to each separately, for it was granted as to Kilmer, though made on his behalf at the same time with that of the others, and denied as to them. The court, therefore, could have as properly granted the motion on the part of Hicks as on that of Kilmer, without undergoing the labor of dissecting and separating as to each. It was, indeed, a motion on behalf of each, and the exception is specific enough for each to claim its benefit. The question then returns, is there evidence sufficient to charge Hicks? It must be conceded that it is much weaker in his case than in that of Tanner. But after all, did he not substantially acknowledge the debt, and direct the same request to be made to Bowman to pay the interest as did his co-surety? Was not his declaration a sufficient recognition to bind him? "You must get it *out of Bowman*," in other words, "I am a surety only, and *though* liable and willing to pay, if the principal fails so to do, I wish you to request him to pay it,

and if he refuses or fails, you can call on me again." Let it be remembered that this declaration or request was made at a time when the note could have been collected of him by legal process, and when a resort to such process would undoubtedly have been made if he had repudiated or refused absolutely to pay or to recognize his liability upon it. But so far from evincing any such intention, he requests, or assents at least, that the agent shall call upon Bowman and receive a payment which is for his own benefit, and which most probably, prevented the prosecution of a suit for its recovery, in which an answer of the statute could not have availed him. Could his design have been otherwise than to renew the note, and thus prolong his own liability in the hope that Bowman would eventually pay the whole debt? It appears to me there can be but one answer to these questions, and that is in the affirmative. It was argued that the request to Bowman was one simply desiring that the holder of the note would get him to pay for himself his own debt. The answer is, that so far as the holder was concerned, Tanner and Hicks were equally liable to pay him the note with Bowman; and it was merely to accommodate them—at their own particular solicitation and for their own particular benefit—that he communicated their wishes to Bowman, and was induced, upon their representations, to take the course which they suggested, and to refrain from prosecuting them before the statute had run. It appears to me that neither Hicks or Tanner should now be permitted to take advantage of a delay which was occasioned by their own acts and declarations, and which was granted for their sole benefit and accommodation. They requested that Bowman should do what was obligatory upon them, and his act in compliance with that request was their act as much as if they had stood by and made the request personally. The objection that it does not appear that the request was connected with Bowman's payment is not, in my judgment, tenable. The evidence is, that the request was communi

cated to Bowman some time after the conversation took place, and that he paid the interest, thus connecting the fact of payment, according to and in compliance with the request.

But it is insisted that the judge should have submitted the facts to the jury; and that he erred in holding as matter of law that the payment was made by the request of the sureties. It may be answered to this position,

First. That the defendants assumed, in their motion for a nonsuit, that there was no dispute as to the facts, and that there was nothing, therefore, to be submitted to the jury.

Second. That no request was made by defendants' counsel to go to the jury. It is to be presumed that if the counsel had insisted upon submitting to the jury any of the questions of fact involved in the case, the court, if proper, would have complied with the request. At all events, it is too late to raise that point here, for the first time, under the general exception to the direction of the judge to the jury to find a verdict for the plaintiff.

The request should have been specific, so that the court could have passed directly upon it. (1 *Kern.*, 61; 2 *id.*, 313; 1 *Seld.*, 422; 2 *id.*, 237; 3 *id.*, 266.)

It was not insisted upon the argument, but the question arose incidentally, whether the promise in this case should not have been in writing, under section 110 of the Code. That section enacts that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of the statute, unless the same be contained in some writing signed by the party to be charged thereby; but that the section *shall not alter the effect of any payment of principal or interest.*"

Section 73 declares that the title shall not extend to actions already commenced, or to cases where the right of action has already accrued; but the statutes now [then] in force should be applicable to such cases according to the

subject of the action, and without regard to the form. Under these sections there may be said to be two answers to such a position:

First. That the latter clause of section 110 does not alter the effect of the payment of interest, such as was made upon the note in this case. The payment was made by Bowman, and as has been more than once remarked in some of the cases cited, was a more satisfactory recognition of the continued existence of the demand, than evidence of declarations respecting it. Most clearly a recovery could have been obtained against Bowman, if he had been living, within the cases in 2 *Comstock*, 527, and 1 *Kernan*, 185. The payment was indorsed upon the note. It was made, as already observed, at the request of the two co-sureties, against whom a recovery was had. The case, therefore, it appears to me, clearly falls within the exception in the latter clause of the section. But,

Second. It also comes within the exception contained in section 73. The original right of action had accrued here, before the adoption of the Code. The debt had not become barred at that time, as it was in *Elstyne* v. *Weeks* (2 *Kern.*, 625), and hence the contract might be revived, without an acknowledgment in writing, under section 110.

These views seem to dispose of the whole case in favor of the plaintiff; and the judgment must accordingly be affirmed.

DENIO, J., dissented from so much of this opinion as imputes the payment by a principal to his sureties, as if made by him as their agent, and put his judgment upon the ground that the language of Hicks and Tanner was a sufficient recognition of their liability under the law as it formerly stood, the Code having no application to the case. JOHNSON, Ch. J., also put his judgment on the verbal recognition of the sureties. He held that the attention of the judge ought to have been called to the distinction between the

cases of Hicks and Tanner, and that Hicks waived any benefit from it by joining with Tanner in his exception. COMSTOCK, J., also went upon the ground that the exception did not distinguish between the cases of Hicks and Tanner.

Judgment affirmed.