## SUPREME COURT.

ISRAEL SLADE, appellant, agt. HENRY MCMULLEN and EDMUND RAYMOND, respondents.

Where the evidence on the trial showed that the plaintiff had title for many years, as well of a timbered portion of his land as of the remainder, separated from the latter by a fence, and acts tending to show actual possession of such timbered land, while the defendant testified that the actual possession of such timbered land was held by himself, under an adverse title to the plaintiff, when the acts constituting the alleged trespass, for which this action was brought, were committed.

*Held*, that this presented a direct question of *fact* for the consideration of the jury, and each party had the right to have it so decided.

Consequently the court erred in granting the defendants' motion for a *nonsuit* on this state of the evidence.

The plaintiff, by opposing the motion for a nonsuit, did not thereby waive his right to have the case submitted to the jury without a particular request to the court to that effect, nor assume thereby that the question was one of law only. It was otherwise with the defendants, for by their motion for a nonsuit they assumed that the case was a proper one for the disposition of the court; and that assumption was a waiver of their right to have it submitted to the jury without some specific request being afterward made in their behalf, provided they had not succeeded on their motion for a nonsuit.

*Third Department, General Term, Albany, March*, 1873.
*Before* MILLER, *P. J.*, INGALLS *and* DANIELS, *JJ.*
APPEAL from judgment recovered on a nonsuit.

BOIES & THOMAS, *for appellant.*
HUGHES & NORTHRUP, *for respondents.*

*By the Court*, DANIELS, *J.*—Substantially the same proof of title to the land on which the alleged trespass was com-

mitted and of possession and claim of title by the plaintiff, was given in this cause as in the case of the same plaintiff against Bulson and Raymond, decided at the present term. From that proof it appears that the plaintiff was the owner of the land and entered into its possession in the spring of 1834, and lived on and occupied it ever since under his deed. Upon his cross-examination as a witness he testified that he never occupied the portion on which the wood was cut by the defendants, that it was wild land and nobody occupied it. But it was further shown that this wood land, being on the rear and easterly portion of the premises conveyed to the plaintiff by the deed executed to him in 1834, was separated from the cleared portion of the same premises by a fence running nearly north and south ; and that the plaintiff, for ten years before the timber was cut down and taken away by the defendants, had cut stakes and poles on the timbered portion near the fence for the purpose of keeping that in repair. This was sufficient, even though there was no actual occupancy of the wood land by the plaintiff to enable him to maintain trespass against persons entering upon it and cutting and taking away the timber without his consent. For having the legal title he was constructively in the possession of the whole lot, and the use made of the timbered portion of the land tended to prove an actual possession of that, within the principle held in *Machin* agt. *Geortner* (14 *Wend.*, 241).

The defendants introduced a deed in evidence made by Mead to the defendant, McMullen, purporting on its face to convey to the grantee all the plaintiff's land up to the fence separating the cleared from the timbered land. This included the land on which the timber in controversy was cut by the defendants. Although this deed professed to convey all the easterly portion of the plaintiff's land, it is entirely clear that it could have no such effect, for the person who executed it had title only to the easterly line of the land described in the deed to the plaintiff, and conveyed to him by that instrument. Notwithstanding the deed to the defendant, McMullen, the

plaintiff therefore continued to be the owner of the land on which the timber was cut, as well afterwards as he was previous to the execution of that deed. But that, of itself, would not entitle the plaintiff to maintain trespass for the timber cut by the defendants if McMullen, at the time, had the actual possession of that part of the plaintiff's land, holding it adversely to his title.

For the purpose of proving that to be the fact the defendant, McMullen, testified that he took possession of the land described in the deed to him as far west as the fence separating the plaintiff's cleared from his timbered land, and held such possession from the spring of 1861 to 1869. That he had cut his firewood there in the spring of 1861 and sold the wood in controversy to Raymond, who cut and took it away. But he never cut any wood there only on these two occasions. These were the only acts of possession mentioned by the defendant, but he added generally that he was in possession, holding this portion of the plaintiff's land adversely.

Under this state of the evidence the court, on the defendant's motion, nonsuited the plaintiff. The evidence, as it stood on the part of the plaintiff, tended to show actual as well as constructive possession on his part at the time when the timber was cut and removed by the defendants. While on the part of the defendants it tended to show an adverse possession in the defendant, McMullen, at that time. The plaintiff testified that nobody occupied the timbered portion of his land, but showed title to it in himself and acts tending to show actual possession, while the defendant, McMullen, testified that the actual possession was held by himself when the acts constituting the alleged trespass were committed. This presented a direct question of fact for the consideration of the jury, and each party had the right to have it so decided.

But the defendants insist that, as the plaintiff neglected to request the court to submit the point to the jury, the omission to do so cannot be urged now as a ground of error. It is difficult to see how such an objection can be consistently

maintained, for the law secured that right to him as it does to all parties not voluntarily waiving it, in the disposition of the disputed question of fact involved in the case. He did nothing at the trial to waive or surrender that right. By opposing the motion for a nonsuit, he, in substance, insisted that such a disposition of the case would be improper; and if so, the only alternative would be the submission of the disputed point to the jury, or the direction of a verdict in his favor. The latter he did not ask, and therefore did not treat the case as one involving only questions of law. As to the defendants it was otherwise, for by their motion they assumed that the case was a proper one for the disposition of the court, and that assumption was a waiver of their right to have it submitted to the jury without some specific request being afterward made in their behalf. Hence, if the court had denied their motion and then followed their assumption that the case depended wholly on the decision of legal points, and in that view had directed a verdict against them, they would have been entitled to no relief on account of the omission to submit the disputed question of fact to the jury, where no specific request so to do appeared to be made by them. In the absence of such a request the court would be justified in supposing, as to the moving party, that there was no question of fact in the controversy which they desired to have considered and decided by the jury. And it was upon that principle that the cases of *Winchell* agt. *Hicks* (18 *N. Y.*, 558); *O'Neil* agt. *James* (43 *id.*, 84), and others of the same tenor have been decided.

But the position of the plaintiff was entirely different. He simply resisted the defendants' motion; and that resistance, in no proper view of the act, could be construed to be a waiver of any of the rights the law secured to him under the evidence which had been given during the trial. He did nothing giving the court to understand that he desired or consented that the case should be disposed of as one dependent only on legal principles, and for that reason performed

no act which could justly be considered as the surrender of any right the law secured him. A very important one in this case was that of having the controverted fact decided by the jury. And as he did nothing inconsistent with his right to have it so disposed of, the court erred in directing the nonsuit. Under the circumstances it was the duty of the court, without any special request on the part of the plaintiff, to submit the case to the jury, for it turned on a simple matter of fact which neither by word or act did he consent should be withdrawn from the decision of that body. And where nothing of that nature is done by a party, his right to have his case decided by the jury can, in no just sense, be said to have been waived by him (*Sheldon* agt. *Atlantic Ins. Co.*, 26 *N. Y.*, 460, 464, 465 ; *Ayrault* agt. *Pacific Bank*, 47 *id.*, 570).

The judgment should be reversed and a new trial ordered, with costs to abide the event.

MILLER, *P. J.*, and INGALLS, *J.*, concur.