BROWN *v.* LATHAM.

A payment of part of a debt does not take the remainder out of the operation of the statute of limitations, unless it is made under such circumstances that a promise to pay the remainder may be reasonably inferred from it.

Where goods and chattels were placed in the hands of the payee of a promissory note, by the maker, at the date of the note, under an agreement to apply the proceeds thereon, such application, without notice to and assent by the debtor, will not constitute a payment from which a new promise may be inferred.

· ASSUMPSIT, on a note made by the defendant in September, 1862, payable to the plaintiff, on demand, with interest. Suit brought in August, 1875. There is a plea of the statute of limitations, and a replication of a new promise within six years. The plaintiff's evidence tended to show, that when the defendant gave the note he placed in the plaintiff's hands certain notes, accounts, and chattels, as collateral security, and authorized him to collect the notes and accounts, and sell the chattels, and apply the proceeds upon the note; that the plaintiff collected some of the notes and accounts, and sold some of the chattels, within six years of the date of the writ, and endorsed the proceeds on the note, in part payment thereof, in 1870, and that he exercised reasonable diligence in collecting the notes and accounts.

The defendant moved for a nonsuit, which the court denied, and the defendant excepted.

*G. Y. Sawyer* and *Sawyer, Jr.,* for the defendant.

The true ground upon which a new promise by a debtor, or, rather, his acts and declarations furnishing evidence of a new promise, are held to take the case out of the statute of limitations, is, that he thereby waives the statute bar. *Titus* v. *Ash,* 24 N. H. 319, and cases cited on page 330. The acts or declarations must tend to show the assent of his mind to the waiver within the six years; and this

can appear only by some conduct, act, declaration, or omission of his within the six years, which, *per se*, or in connection with previous acts or declarations, indicates the existence, at the time, of his mental assent to the waiver. Thus, where a partial payment was made by a surety within the six years, in the presence and with the knowledge of the principal, but without his objection, this was held sufficient evidence of a new promise by the principal, not because the surety had the power, by his mere act of making the payment, to bind the principal, but because the tacit assent of the principal standing by and saying nothing, shows the consent of his mind, at the time, to the waiver. *Whipple* v. *Stevens*, 22 N. H. 219. So, in *Chapman* v. *Boyce*, 16 N. H. 237, the maker of the note in suit, having given an order for a payment upon it more than six years before the suit, stood by without objection; while the party on whom the order was drawn made the payment subsequently within the six years, and was thereby held liable because of the assent of his mind indicated by his standing by and saying nothing by way of protest against further liability.

It is difficult to conceive of any just ground upon which it can, in any case, be held that a debtor has waived the bar, except it be that by some act or declaration of his, or by some omission or neglect to act, speak, or protest within six years, he has fairly indicated that his mind then and thereby assented to the waiver. It is essential to the nature of a new promise that he should in some way indicate this then existing assent. Would the express agreement of the debtor, at the time of contracting the debt, not to take advantage of the statute, be held to remove the bar thirteen years afterwards? What new promise could be found in such case, where the promise to waive the statute was just as old as the original promise to pay the debt?

Here, the act of pledging the securities to be sold and collected, and the proceeds applied upon the note, is as old as the promise to pay the note. What new promise can be found in that thirteen years old transaction?

If it be said that, by pledging the securities with authority to sell and collect, and apply the proceeds, the defendant constituted the plaintiff his agent to make the partial payment (a position the soundness of which we deny), so, too, we may answer, was the drawer of the order in *Chapman* v. *Boyce*, and the surety in *Whipple* v. *Stevens*, in the same sense, the agents of the debtors, and for the same purpose; yet the essential feature in those cases, which is wholly wanting in this, was held by the court to be the fact that the debtors stood by and saw the payments made within the six years without dissent or protest. Assuming, for the moment, that the plaintiff may be regarded as the defendant's agent,—agent for what? The answer would probably be, to sell, and collect, and apply the proceeds upon the note. But, upon what ground is it to be further assumed that this makes the creditor the agent for making a new promise, by himself as agent, to himself as principal? The question in this case is simply this: Whether the court will, by judicial decision, engraft

upon the statute an exception to its operation, of a character substantially similar to that engrafted by the legislature, in providing that debts secured by mortgage are not within its operation so long as a suit may be brought on the mortgage, by holding that debts secured by a pledge of collaterals are not within its operation so long as any avails can be obtained from the collaterals to be applied on the debt, and for six years longer. Though the case here finds that the pledge was made with authority to the creditor to sell, and collect, and apply the proceeds to the debt, this authority is just what the law confers without the consent of the debtor. But it is not the authority of an agent. Here is no relation of principal and agent, as would be the case if the debtor had procured a third person to sell, and collect, and apply the proceeds to the debt. In such case, the ownership of the property would still remain in the debtor, and the money realized from the sales and collections in the hands of such third person would still be his money, and the third person would use *his* money as *his* agent in making the payment. It is not so in this case. The title to the property pledged here passed to the creditor, and the money received from it was, *eo instante*, his, and never the debtor's; and the note was paid, *pro tanto*, at once, whether the money was ever in fact applied by an endorsement on it or not. It is a fallacious use of the term " agent," to say that the creditor in such case is the agent of the debtor for any purpose. It is falsely assumed that the agency exists, and upon this false assumption is attempted to be built up the equally false conclusion that the application of the money to the debt, under such agency, is to have the same effect upon the statute bar as if the money had then been paid by the debtor himself.

*W. W. Bailey*, for the plaintiff.

I. A part payment of a note by the maker, if there be nothing to vary or control it, is evidence from which it is the duty of the jury to find a new promise to pay the note. *Jones* v. *Jones*, 21 N. H. 219 ; *Whipple* v. *Stevens*, 22 N. H. 219 ; *Bank* v. *Sullivan*, 6 N. H. 134.

II. Where notes, accounts, or chattels are made over by the maker of a note to the holder to be collected or sold, and the proceeds applied in part payment of the note, if such collection or sale is made within a reasonable time, and the proceeds endorsed upon the note, it will be considered as a part payment of the note by the maker, at the time of such collection or sale and endorsement. *Whipple* v. *Blackington*, 97 Mass. 476 ; *Porter* v. *Blood*, 5 Pick. 54 ; *Haven* v. *Hathaway*, 20 Me. 345 ; Angell on Limitations, *s.* 247. These authorities are such as to establish this point beyond controversy.

III. The defendant, in his brief, seems to overlook the law as laid down in the above cited authorities. He certainly cites no contrary authorities ; and that law is too well established by authorities to be

overturned by mere suggestions or queries as to its reasonableness or soundness.

*G. Y. Sawyer* and *Sawyer, Jr.*, in reply.

None of the authorities cited by the plaintiff sustain the position that any evidence of a new promise is to be found in the facts of this case.

In *Whipple* v. *Blackington*, 97 Mass. 476, the decision is expressly placed upon the ground that the defendant himself, within six years before suit, collected the money on the note which he had previously pledged to the plaintiffs, and passed it over to them to be applied upon the claim in suit. This is strictly in accordance with the views presented in our former brief. The case of *Porter* v. *Blood*, 5 Pick. 54, is an authority directly in point, that here is no evidence of a new promise. In that case the defendant pledged to the plaintiff certain goods as security for the note in suit. Some of the goods were sold immediately after they were pledged, and others not until five years and some months after, the former being more than six years, and the latter within six years, before suit brought; and the question was, whether this latter sale took the case out of the statute. PARKER, C. J., directed a verdict for the defendant, which was sustained by the whole court. In his instructions to the jury, the chief-justice says that " without any account transmitted to the defendant, or any notice that the property remained unsold, or any demand of the payment of the note after the delivery of the merchandise to the plaintiff, or any evidence that the defendant had knowledge of the plaintiff's proceedings in relation to the same, this final sale would not be considered in law a payment by the defendant, or an acknowledgment of indebtment on the notes." That case is precisely this, except that in this case more than seven years had elapsed after the pledge before a sale or collection within the six years preceding the suit. In delivering the opinion of the whole court, WILDE, J., says,—" If the plaintiff had immediately sold the goods and indorsed the proceeds of the sale on the note, it would have been considered as a payment made by order of the defendant. But this should have been done in a reasonable time, otherwise * * * there would be no termination to his liability. * * * The question then is, whether the sales were made within a reasonable time. We think very clearly that they were not. Admitting the sales to be valid, so as to vest the property in the purchasers, it does not follow that the plaintiff was authorized to appropriate the proceeds so as to revive the defendant's liability without his assent, and without rendering an account of sales or giving any kind of notice." If it is claimed that this case is an authority for the doctrine that the sale of pledged property, and the application of the proceeds to the debt for which it is pledged, furnish evidence of a new promise at the time of the sale and application, our answer is, first, that the case called for no opinion upon that question, and what is said upon the

subject is merely a *dictum* of the judge, unsupported by authority or reason, and founded wholly on the fiction that in such sale and application the plaintiff is the agent of the defendant; and second, that, admitting the doctrine enunciated in this *dictum* to be correct, it has no application to this case, because, in all the cases from the Massachusetts and Maine reports cited by the plaintiff, the doctrine is held only to the extent that such sale and application furnish evidence of a new promise when made within a reasonable time after the pledge. But assuming that the plaintiff may well enough, in such case, be regarded as the agent of the defendant to sell the property pledged and apply the proceeds to the debt, upon what common-sense view is it to be held that the defendant, because he makes the plaintiff his agent to pass the title of the property by sale, thereby also makes him his agent to revive the debt by a new promise at the time of the sale? If the agency for the former purpose necessarily creates the agency for the latter, then what ground is there for the distinction that the agency for the latter is limited to a reasonable time after the pledge? The plaintiff is just as much the agent of the defendant to sell the property thirteen years after the pledge, as one,—and this, because, by the pledge, the defendant agrees at the time that he may so sell; but when, how, and upon what fair view of the case has the defendant ever agreed to the extension of the statute of limitations beyond the six years? When courts deemed it their duty to resort to quibbles to get rid of this statute, fallacies and fictions were made to trifle with it as with no other. Is it not a fallacy and a quibble to hold, that because a debtor, by a partial payment made to-day upon a note, thereby indicates his mental assent to the balance of the debt as justly due, and to a waiver of the statute for six years more, *therefore* his pledge of property *to-day* as security for the debt indicates the assent of his mind one, two, or ten years hence, to the legality of the debt and to a waiver of the statute for six years from that time?

STANLEY, J. The issue is on the replication of a new promise by the defendant within six years from the date of the writ. Such promise need not be express; it may be implied. The inference that the defendant, within six years prior to the date of the writ, made such new promise, may be drawn from such declarations made, or acts done (including silence under some circumstances), at a particular time within the six years, as show his acknowledgment at that time that the debt was unpaid; that he was liable to pay it, and that he was then willing to pay it. Mere payment is not such an acknowledgment. It must appear that the payment was a partial one, leaving a part of the debt unpaid, and that the debtor so understood it. If this does not appear, the payment does not show his acknowledgment of his liability and willingness to make another payment. *U. S.* v. *Wilder*, 13 Wall. 254; *Tippetts* v. *Heane*, 1 C. M. & R. 252. Payment of a part is not enough, unless it is made under such circumstances that a promise to pay the remainder may be reasonably inferred from

it. *Livermore* v. *Rand*, 26 N. H. 85–90 ; *Morgan* v. *Rowlands*, L. R., 7 Q. B. 493.

In this case, the defendant, within six years of the date of the writ, neither made a partial payment, nor assented to any being made for his benefit. Within that time he has neither done nor said, nor omitted to do or to say, anything from which a new promise can be implied. Assuming, for the purposes of this case, that the plaintiff's receipt of the proceeds of the collateral security, and his application of them in part payment of the debt, were in every sense legal and right, there are many cases in which the creditor's legal receipt and application of a payment do not show a new promise of the debtor. *Mills* v. *Fowkes*, 5 Bing. N. C. 455 ; *Nash* v. *Hodgson*, 6 DeG. M. & G. 474 ; 31 Eng. L. and Eq. 555 ; *Burn* v. *Boulton*, 2 C. B. 476 ; *Bank* v. *Wooddy*, 5 Eng. 638 ; *Wood* v. *Wylds*, 6 Eng. 754 ; *Pond* v. *Williams*, 1 Gray 630 ; 3 Par. Con. 76, and note ; *Walker* v. *Butler*, 6 El. & Bl. 506.

But such payment need not be made by the party himself. It may be made by an agent duly authorized for that purpose, and payment so made will be as effectual as if made by the principal. But it is not enough that the agent is authorized to make the payment ; his authority must enable him to bind the principal by a promise to pay, and such authority cannot be implied from the bare authority to make the payment. *Winchell* v. *Hicks*, 18 N. Y. 558.

So it is settled by numerous authorities that a payment by assignees in bankruptcy or insolvency does not take a case out of the statute. *Roscoe* v. *Hale*, 7 Gray 274 ; *Stoddard* v. *Doane*, *ib.* 337 ; *Pickett* v. *Leonard*, 34 N. Y. 175 ; *Roosevelt* v. *Mark*, 6 Johns. Ch. 292 ; *Davies* v. *Edwards*, 7 Exch. 22 ; 1 Sm. Lead. Cas. 869, 890. And this is upon the ground, not that the payment was not authorized, but that the authority did not extend to binding the party by an acknowledgment of the debt and a promise to pay it.

What was the contract between these parties, and what was its legal effect ? The defendant placed in the plaintiff's hands the notes, accounts, and chattels, as collateral security for the note in suit. He authorized the plaintiff to collect and convert them into money, and apply the proceeds in payment of the note. He, in fact, made an assignment of that part of his property for the payment of the plaintiff's debt. He was the assignor, the plaintiff the assignee ; and it is the same in principle as if he had made an assignment of all his property for the benefit of all his creditors. This was the whole extent of his contract, and the limit of the plaintiff's authority. The plaintiff's right, in this case, to receive the proceeds and to apply them in part payment, and his exercise of that right within six years of the date of the writ, were neither a promise made by the defendant within that time to pay the residue of the debt, nor an acknowledgment made by the defendant within that time of his liability and willingness to pay the residue, nor evidence from which it can be inferred that within that time the defendant made, or intended to make, or

was understood to make, such promise or acknowledgment. What the defendant did in 1862 was an acknowledgment of a liability and a promise to pay at that time, but it has no tendency to prove that he afterwards made such promise and acknowledgment, or authorized them to be made. The placing of the security in the plaintiff's hands was of no greater force or effect than the giving of the note itself. It was not understood or intended to be a future promise, or a future acknowledgment of a future liability and a future willingness to pay; nor is there any evidence of knowledge on the part of the defendant of the collection or application of the money upon the note, or of any information in regard to it, from the date of the note in suit until this suit was brought, so that the defendant's assent to the indorsement cannot be presumed. How, then, can it be said that the indorsement relied on by the plaintiff is evidence of an acknowledgment and a willingness to pay, from which a promise to pay the balance can be implied? How can the assent of the defendant be presumed, when he had no knowledge? How can such payment be treated as part payment of a greater debt? What is there to show that the defendant did not understand, when the collateral was placed in the plaintiff's hands, that it was not sufficient to satisfy the principal debt? If no promise can be implied from a payment by assignees in bankruptcy, or in insolvency, or in case of a voluntary assignment, certainly none can be implied from the facts disclosed in this case. When the defendant placed the collateral in the plaintiff's hands, he conferred upon him authority only to collect and apply the proceeds upon his note. He made the plaintiff his agent for that purpose alone. He set apart so much of his property, and placed it in the plaintiff's hands as security for his debt. The plaintiff can stand no better than if the collateral had been placed in the hands of a third party, with authority only to collect and apply the proceeds on the plaintiff's debt. Under such circumstances the application could not be treated as a payment from which a new promise could be implied, for the obvious reason that the agent's authority did not go to that extent. If the payment by the agent under such circumstances is such that a new promise may be implied from it, then the principal is bound by the act of the agent beyond the scope of his authority.

If, then, the agent would have no power to bind his principal by a new promise, unless specially authorized for that purpose, much less would the plaintiff who makes the application of the defendant's property. *Smith* v. *Coon*, 22 La. An. 445; *Lincoln* v. *Johnson*, 43 Vt. 74; *Graham* v. *Selover*, 59 Barb. 313; *Harper* v. *Fairley*, 53 N. Y. 442; *Read* v. *Hurd*, 7 Wend. 408; *Lyon* v. *State Bank*, 12 Ala. 508; *Smith* v. *Ryan*, 39 N. Y. 484; S. C., 66 N. Y. 352; 10 Bos. 122.

The plaintiff relies upon some authorities which recognize the doctrine that a debtor's giving collateral security, and the creditor's application of the proceeds of it within a reasonable time, are evidence of a new promise made at the time of the application. The qualification

of a reasonable time relieves the doctrine of a degree of injustice, but furnishes no sound foundation. It signifies that the doctrine is based upon the creditor's authority to receive the proceeds of the security in payment of the debt within a reasonable time; but the creditor's lien upon the pledged property, and his authority to appropriate the proceeds, are not restricted in that way. He is authorized to receive the proceeds after the lapse of a reasonable time, and apply them to the debt; but what he receives after the expiration of a reasonable time is as much a payment as what he receives before, and his authority in the former case is as clear as in the latter. His authority, in both cases, is to receive payment out of the proceeds. The foundation of the doctrine of a new promise of the debtor within a reasonable time, supposed to exist in a limited authority of the creditor to receive payment derived from collateral security within a reasonable time, wholly fails.

There is a material difference between receiving a payment, and making one. The plaintiff's authority was not to make a payment of the proceeds, but to receive them in payment; and, whether what he did was receiving a payment or making one, it was not done by the defendant, or by his authority, within six years of the date of the writ, and it is immaterial whether it was done by the plaintiff within a reasonable time.

Authority given the plaintiff by the defendant, to receive the proceeds of the security within or beyond a reasonable time, is no evidence of authority given him to bind the defendant at any time by a new promise or acknowledgment. If the plaintiff's receipt of payment of part of the debt from the security within the six years was, for some purposes, a payment made by the defendant, it was not made under such circumstances that his promise to pay the remainder can reasonably be inferred from it.

*Exception sustained.    Motion for nonsuit granted.*