## HOLT *v.* GAGE.

When the plaintiff seeks to remove the bar of the statute of limitations by proof of a new promise by implication from an acknowledgment of the debt, the evidence should show an admission of a previous subsisting debt, which the defendant is liable and willing to pay.

The taking of security from the principal by a surety upon a promissory note is not of itself an admission to the holder of an indebtedness which the surety is liable and willing to pay sufficient to remove the bar of the statute of limitations.

ASSUMPSIT, on a promissory note for $2,200, dated April 11, 1873, payable on demand with interest annually, and signed by C. & J. C. Gage, and the defendant, Isaac K. Gage. Plea, the general issue and the statute of limitations. C. & J. C. Gage were the principals on the note, and the defendant was surety. Two payments were made in 1878 by J. C. Gage, which were endorsed, but nothing has been paid by the defendant.

The plaintiff claimed a new promise by the defendant; and to prove it, he testified that at one time he called on J. C. Gage, when the defendant was present, to make a payment, and Gage replied, "You are well enough; you need not be afraid; you wait and you shall have your pay." The conversation was with J. C. Gage, and the defendant said nothing. He also testified that, at another time, in 1879, before the note was six years old, he told the defendant that J. C. Gage had paid something on the note, and promised to pay more when he sold his shooks; that the defendant said he did not believe he got much for his shooks, for they were not very good.

Subject to the defendant's exception, the plaintiff introduced a mortgage, dated May 19, 1877, and given by C. & J. C. Gage to the defendant to indemnify him against his liability as surety on sundry notes, among them the note in suit. The defendant, June 25, 1877, assigned it to the Penacook Savings Bank. The plaintiff then testified that after the assignment to the bank he asked the defendant if he held his *pro rata* with the bank, to which the defendant replied, "I cannot tell. You can ask Butler; he can tell more particularly." On cross-examination, the plaintiff testified "the note was given for the debt of C. & J. C. Gage. I supposed the defendant was surety. I do n't think the defendant was present when either payment was made on the note. The conversation with J. C. Gage was in the office. The defendant was at the desk writing, and within ten feet of him. Nothing was said, only I wanted my money. I do n't know whether anything was said about the note. I was riding with the defendant once, and he introduced the subject by asking if J. C. Gage had paid any money lately. I told him he had agreed to pay some. The defendant never said he would pay the note. He never indicated any willingness to pay it. I do n't remember that I ever asked him to pay it, or that he ever promised to pay it. In the summer of 1879, after the note was six years old, he said J. C. Gage had gone to the beach, and he should think he had better sell off his property and pay up his debts."

The plaintiff having rested, the defendant moved for a nonsuit on the ground that there was no competent evidence to show a new promise. The motion was denied, and the defendant excepted.

The court instructed the jury, that, to recover, the plaintiff must prove an acknowledgment of the debt, and a promise to pay within

six years next before the commencement of this suit; that if they
found that the defendant did acknowledge the debt within that
period, that would be evidence for them to consider on the question
of a promise to pay, and it would be competent for them to find a
new promise from that fact.   To the instruction, that if the jury
found an acknowledgment they might consider it as evidence on
which to find a new promise, the defendant excepted.

Verdict for the plaintiff, and motion for a new trial.

*N. Butler*, for the defendant.   1. The motion for a nonsuit
should have been granted.   There was no evidence from which a
new promise could be raised by implication of law.   In the leading
case of *Bell* v. *Morrison*, 1 Pet. 362, Mr. Justice *Story* says,—" If
there be no express promise, but a promise is to be raised by im-
plication of law from the acknowledgment of the party, such
acknowledgment ought to contain an unqualified and direct admis-
sion of a previous subsisting debt, which the party is liable and
willing to pay.   If the expressions be equivocal, vague, and indeter-
minate,   *   *   *   they ought not to go to a jury as evidence of a
new promise."   This appears to be the well established and recog-
nized rule.   *Russell* v. *Copp*, 5 N. H. 155; *Bank* v. *Sullivan*, 6 N.
H. 135, 136; *Blair* v. *Drew*, 6 N. H. 247; *Kittredge* v. *Brown*, 9
N. H. 377; *Ventris* v. *Shaw*, 14 N. H. 425; *Manning* v. *Wheeler*,
13 N. H. 487; *Douglas* v. *Elkins*, 28 N. H. 33; *Jones* v. *Jones*, 21
N. H. 222; *Allen* v. *Webster*, 15 Wend. 284; Ang. Lim., ss. 212,
218, and notes; 2 Greenl. Evid., *s.* 440, and notes; 1 Sm. L.
C. 323; *Batchelder* v. *Batchelder*, 48 N. H. 23.   The facts of
this case do not bring it within any of the cases in which the facts
have been held sufficient to raise an implication of a new promise.
But it was claimed at the trial that the defendant by his silence
admitted the debt.   The plaintiff's evidence was, that the defend-
ant was writing at his desk; that the conversation was between
the plaintiff and J. C. Gage, and the defendant said nothing.   The
plaintiff was asking J. C. Gage for money, and nothing was said
about the note.   The defendant was attending to his own busi-
ness, and it does not appear that his attention was called to the
conversation, or even that he heard it; but admitting that he did
hear it, nothing was said which called on him to speak.   The silence
of the party is not evidence against him, unless the circumstances
call for some reply.   *Corser* v. *Paul*, 41 N. H. 29; *Clement* v.
*Brooks*, 13 N. H. 96.   What should the defendant have said? He
could not deny his liability, because the note was not then six
years old, and he was not called upon to extend or renew his lia-
bility.   In *Whipple* v. *Stevens*, 22 N. H. 219, a partial payment
on a note by the surety in the presence of the principal, who said
nothing, was held to afford sufficient ground for an inference of a
new promise as to the principal.   *Simpson* v. *Currier*, *ante* 19.

2. The mortgage from C. & J. C. Gage to the defendant was

improperly admitted. It had no tendency to prove a new promise. A person sued upon a note, who has given no mortgage to secure it, may avail himself of the statute of limitations as a bar to any action upon the note after six years. *Savings Bank* v. *Ladd*, 40 N. H. 459. The defendant's contract was, to be liable on the note for six years unless it was sooner paid. *Savings Bank* v. *Ladd*, 40 N. H. 465.

The mortgage was made May 19, 1877, and assigned to the bank June 25. 1877, nearly two years before the note in suit became six years old. The defendant took the mortgage to secure himself against his then existing liability on this and other notes. It was not made to secure payment of the note, but to indemnify the defendant against his liability, which ceased when the note became six years old. There is nothing in this transaction tending to prove a new promise, or a willingness on the part of the defendant to extend his liability beyond the six years. As to the other conversations between the plaintiff and the defendant, there is nothing amounting to even an admission of liability by the defendant, and nothing which can be tortured into an indication of willingness to pay.

The instructions to the jury stated only half the rule. A bare acknowledgment of the existence of the debt, without something indicating an intention or a willingness to pay, is not competent evidence of a new promise. The defendant could not, without being guilty of falsehood, deny the existence of the note in suit; but is the fact that he was not guilty of such falsehood evidence from which a new promise can be found?

*S. C. Eastman* and *Pike & Parsons*, for the plaintiff. 1. On the motion for a nonsuit, if there was any competent evidence before the jury from which they could come to the result reached, the verdict must stand. *Dailey* v. *Blake*, 35 N. H. 29; *Page* v. *Parker*, 43 N. H. 363.

2. The admission of a debt is evidence from which a new promise may be inferred. If there are no rebutting denials of an intention to pay, the acknowledgment that the debt is still existing will authorize the jury to infer a new promise. *Exeter Bank* v. *Sullivan*, 6 N. H. 124; *Stanton* v. *Stanton*, 2 N. H. 426; *Ventris* v. *Shaw*, 14 N. H. 422. The conversation in the counting-room was in the presence of the defendant. There was a repeated demand for payment, and repeated assurances by J. C. Gage that the plaintiff was secure, and should be paid if he would wait. The jury were at liberty to find whether the defendant heard the conversation and understood it. If he did, he knew that the plaintiff delayed in consequence of these assurances, and, by not manifesting any objection, he is estopped to deny that he did not adopt them. Mere silence is often the best indication of an estoppel, though mere silence may not amount to an acceptance of a contract.

3. Part payment is evidence from which the jury must infer a new promise to pay the balance. *Jones* v. *Jones,* 21 N. H. 219. Such a payment was made by C. & J. C. Gage. If this payment was made with the knowledge and consent of Isaac K. Gage, so that he adopted the payment, then the jury would be bound to find a new promise from that payment. In the conversation when riding with the plaintiff, the defendant asked the plaintiff about this payment, introducing the subject himself. He could have known of the payment only from C. & J. C. Gage. From this the jury were at liberty to infer that he sanctioned and adopted the payment; and if he did, the verdict must stand.

4. The acknowledgment may be to a third person. *Titus* v. *Ash,* 24 N. H. 329. May 19, 1877, Isaac K. Gage received from C. & J. C. Gage a mortgage of $30,000 of real estate to save him harmless from having signed a number of notes, among them the one in question.

The mere receiving of the mortgage was an allegation on the part of Isaac K. Gage to C. & J. C. Gage that the debt to Holt was an existing debt, which he was liable and willing to pay without any qualification. The declaration, then, must enure for the benefit of the plaintiff under the decision already cited. It is not the case of a mortgage made by a co-signer to the holder of the note, as in *Savings Bank* v. *Ladd,* 40 N. H. 459. It is an act in which he participated, and which would have no force without his assent. It is an act by which the property of the principal signers, on which the plaintiff had a right to rely for the payment of his debt, is withdrawn from the fund to pay his claim, unless our view is sustained. If the defendant can thus, by an instrument purporting to secure this very liability, abstract all the property of the principals and apply it to such claims as he chooses, and reject all others, at the same time denying his further responsibility, he is allowed to convert what was apparently a matter of protection into an instrument of devastation. Had the plaintiff's note not been mentioned in the deed, he would have naturally heeded the warning and sued the defendant at once. But this is not all: June 25, 1877, the defendant executed an assignment of this mortgage to the Penacook Savings Bank, the largest holder of the endorsed notes. The assignment was as follows:

" Be it known that I, Isaac K. Gage, within named, in consideration of five hundred dollars to me paid by the ' Penacook Savings Bank,' a corporation duly organized under the laws of the State of New Hampshire, and doing business in Concord in the county of Merrimack, do hereby grant and assign to said ' Penacook Savings Bank ' all my right, title, and interest in and to the within written mortgage and the premises therein described, to be held by said ' bank ' for the same purposes and to secure the same debts and liabilities for which the same was made, and for which

I have hitherto held the same. Witness my hand and seal this 25th day of June, A. D. 1877.　　　　　　　Isaac K. Gage [L. S.]"

This was not recorded till March 9, 1880. This is a distinct and explicit recognition over his own hand of the then existing indebtedness. It is apparently designed for the protection of Holt just as much as for the bank. There can be no question that, so far as the notes held by the bank are concerned, their validity was recognized and renewed. Yet to exclude the note of Holt is to give to the bank greater rights than was designed. The bank has foreclosed the mortgage. If the Holt note is not a liability of Gage, then the bank can make a larger application of the fund to its own claims. Hence, perhaps, the concealment of the transfer.

5. The charge of the judge, though very briefly stated in the case, is not erroneous, but corresponds with the law as stated in the cases cited.

SMITH, J. In *Stanton* v. *Stanton*, 2 N. H. 425, decided in 1822, and in *Atwood* v. *Coburn*, 4 N. H. 315, decided in 1828, it was held that a simple acknowledgment of a debt does not take a case out of the statute of limitations; but such acknowledgment is evidence from which a jury may, if there be nothing to rebut it, presume a promise to pay which will take the case out of the statute. These are the only cases in our reports where the doctrine of the early English cases, that a mere acknowledgment of a debt is evidence from which a new promise may be inferred, is upheld. *Heylin* v. *Hastings*, 1 Ld. Raym. 421—*S. C.*, Carth. 470, and Comyns 54; *Sparling* v. *Smith*, 1 Ld. Raym. 741; *Trueman* v. *Fenton*, Cowp. 548; *Anon.*, 1 Salk. 154; *Gofton* v. *Mill*, 2 Vern. 141; *Mountstephen* v. *Brooks*, 3 B. & Ald. 141.

In *Bell* v. *Morrison*, 1 Pet. 362, decided in 1828, it was held, that, when the bar created by the statute of limitations is sought to be removed by proof of a new promise by implication from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay. Subsequent cases in our own reports have followed the decision in *Bell* v. *Morrison*. *Russell* v. *Copp*, 5 N. H. 154; *Bank* v. *Sullivan*, 6 N. H. 124, 135; *Blair* v. *Drew*, 6 N. H. 235, 247; *Eastman* v. *Walker*, 6 N. H. 367; *Kittredge* v. *Brown*, 9 N. H. 377; *Ventris* v. *Shaw*, 14 N. H. 422; *Jones* v. *Jones*, 21 N. H. 222; *Whipple* v. *Stevens*, 22 N. H. 219; *Douglas* v. *Elkins*, 28 N. H. 26; *Batchelder* v. *Batchelder*, 48 N. H. 23; *Brown* v. *Latham*, 58 N. H. 30; *Dodge* v. *Leavitt*, 59 N. H. 245; *Stowell* v. *Fowler*, 59 N. H. 585; *Simpson* v. *Currier*, ante 19; 2 Greenl. Evid., s. 440; 1 Sm. L. C. 323. In *Manning* v. *Wheeler*, 13 N. H. 486, it was said, "The expression of a willingness to pay is an important part of the evidence, and cannot be dispensed with."

In *Whipple* v. *Stevens*, *supra*, the surety, before the note was

barred by the statute, made a payment upon the note from his own money in the presence of the principal, and it was held that he had a clear right to make the payment, and thereby entitle himself to an action to recover of the principal the amount paid, and that the payment might well be regarded as made with the assent of the principal, implied from his presence and silence, and so being a payment made by the principal was evidence of a new promise.

But when the principal makes a payment in the presence of the surety, he does what his contract with the holder and with the surety requires him to do, and such payment creates no new obligation on the part of the surety to the holder. It discharges *pro tanto* the principal's obligation to him. The surety is under no obligation to speak when the payment is made, and his silence cannot be construed to his prejudice.

Was there any evidence that the defendant acknowledged an existing debt which he was liable and willing to pay? The plaintiff's own testimony was, that the defendant never said he would pay the note, nor indicated any willingness to pay it; and he does not remember that he ever asked him to pay it, or that he ever promised to pay it. The defendant took no part in the conversation when C. J. Gage told the plaintiff to wait, and he should have his pay. The conversation was not addressed to him, and he may not have heard it. He was then liable, and could not truthfully have denied his liability if he would. The plaintiff did not agree to extend the note, and it does not appear that he said or did anything to give the defendant to understand that the note would be extended. If the defendant was silent when the principal asked the plaintiff to wait, so was the plaintiff. If the defendant was called on to speak, it would seem that the plaintiff was equally under obligation to make known whether or not he would wait as requested. The defendant's legal liability would cease at the expiration of six years from the time the note first became payable. It must be presumed the plaintiff knew this as well as the defendant, and the defendant was under no obligation to remind the plaintiff of a fact which he was equally bound to know. If the defendant is liable because of his silence, it is upon the ground of estoppel; but it does not appear that the plaintiff changed his position in consequence of the defendant's silence. We see nothing in this conversation, or in the other conversations testified to, tending to show an admission on the part of the defendant of a willingness or liability to pay the note.

It is claimed that the defendant, by taking the mortgage, admitted that the note was an existing debt which he was liable and willing to pay. So far as the taking of the mortgage was an admission, it was coëxtensive merely with his liability, and the effect was not to enlarge it. It would be strange if a surety could not take security without extending his liability a further period of

six years. No case has been cited to us to that effect. If the taking of security was an admission by the defendant of his liability as surety, there was nothing in the act itself that shew an intention to extend his liability beyond the time for which he originally became holden.

How far the plaintiff became subrogated to the rights of the defendant under the mortgage, we have no occasion at this time to consider.

If there was any admission of the defendant's liability in the assignment of the mortgage to the bank, it had no reference to a renewal of liability after it should expire by limitation.

*Verdict set aside.*

STANLEY, J., did not sit: the others concurred.