Henry R. GUILD, Jr. et al.,
Plaintiffs-Appellees,

v.

MEREDITH VILLAGE SAVINGS BANK,
Defendant-Appellant.

No. 80–1470.

United States Court of Appeals,
First Circuit.

Argued Nov. 4, 1980.

Decided Dec. 22, 1980.

Daniel J. Callaghan, Manchester, N. H., with whom Joseph A. Millimet, and Devine, Millimet, Stahl & Branch Professional Association, Manchester, N. H., were on brief, for defendant-appellant.

William S. Strong, Boston, Mass., with whom Herrick & Smith, Boston, Mass., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, HOFFMAN,* District Judge.

BOWNES, Circuit Judge.

In this diversity case, defendant-appellant, Meredith Village Savings Bank, appeals a judgment of the district court ordering it to return to plaintiffs certain debentures pledged to the bank by plaintiffs' decedent as security for a demand note to

* Of the Eastern District of Virginia, sitting by designation.

the bank executed by Donald Shoup.[1] The court ruled that the statute of limitations had run on the note and, because it was not collectible, the bank no longer had any right to the collateral and ordered the collateral returned to plaintiffs.

There are two issues:

1. Does the expiration of the statute of limitations on a demand note nullify the bank's rights to collateral pledged by a third party?

2. Does the periodic payment of interest on a demand note sufficient to keep the interest current toll the statute of limitations?

On August 1, 1972, Donald S. Shoup executed an interest-bearing demand note to the bank for the principal sum of $61,250 and deposited collateral to secure the loan. Subsequently, the plaintiffs' decedent, Barron P. Lambert, Jr., pursuant to an hypothecation agreement with the bank, deposited $125,000 in bonds in substitution for the original collateral. The hypothecation agreement[2] authorized the bank to deal with the pledged securities "in the same way and with the same force and effect" as if Shoup were the "absolute owner." It also provided that the securities, or what remained of them after the note was satisfied, should be returned to Shoup and his receipt alone would be sufficient to relieve the bank of further responsibility for them. The bank is presently holding all the bonds

as well as $1,245 in currently due coupons. The bank does not have any collateral or assets belonging to Shoup. No principal payments have ever been made on the note, but interest payments were current at the time this action was brought.

Prior to this suit, the bank demanded that Shoup pay the principal; he did not and told plaintiffs that he was unable to do so. The plaintiffs demanded that the bank return the collateral; the bank refused and informed plaintiffs that it would foreclose on the collateral to satisfy the note.

This action was then brought asking that the collateral be returned to plaintiffs on the grounds that the note was no longer enforceable because the applicable six-year statute of limitations had run. See N.H. Rev.Stat.Ann. § 508:4 (Supp.1979).

We do not agree with the district court that *Merrimack River Sav. Bank v. Higgins*, 89 N.H. 154, 195 A. 369 (1937), is controlling here. In *Higgins* the bank was suing an accommodation endorser of a demand note after the statute of limitations had run on the note. The issue was whether payments of principal and interest by the maker of the note could suspend the running of the statute as to the endorser when the endorser had not made any statements or taken any actions on his own behalf that would have suspended the running of the statute. The court held that the principal and inter-

---

1. Shoup was also named as a defendant in the action. He filed what appears to be a late answer, but has taken no part in the case, either in the district court or on appeal.

2. Gentlemen:

We hereby authorize *Donald S. Shoup* hereinafter described as the Borrower, to pledge as collateral security for the payment of any and all loans now or hereafter made by you to the borrower and for any and all renewals thereof, and for the payment of any direct or indirect liability of the Borrower's to you, due or to become due, or that may hereafter be contracted, and for the payment of any note or notes now or hereafter given by the Borrower to you, and upon the terms stated therein, the following securities belonging to me/us, or of which I/we am/are the holder of record, namely: *Mass. Turnpike Debentures # 54292–311, 9019–25, 9201–65, 9181–88*

*Totaling 40,000 par value.*
Also any securities of mine/ours or of which I/we am/are the holder of record, which the borrower may hereafter deposit with you for the purposes aforesaid; and I/we do hereby give you the same powers with respect to said securities as is contained in any note or notes given you as aforesaid by said Borrower, hereby authorizing you to deal with said securities in the same way and with the same force and effect as if said securities pledged by said Borrower as collateral security therefor had belonged to said Borrower.

I/we also authorize you to deliver to said Borrower the said securities, or any part thereof, whenever you may wish, and the Borrower's receipt shall be your sufficient acquittance therefor, meaning and intending to authorize said Borrower to act with said securities as if the Borrower were the absolute owner thereof.

est payments by the maker did not toll the statute of limitations as to the endorser.

In applying *Higgins* to this case the district court reasoned that, because payments of principal and interest on a demand note by the maker did not toll the statute as to an endorser, it followed that such payments would not toll it as to a pledgor of collateral. Although such a result seems on the surface to be a logical application of *Higgins*, it overlooks certain basic differences between *Higgins* and the case at bar.

■ In *Higgins* the bank had already foreclosed on the collateral and was pursuing the endorser for the difference between what it had realized on the foreclosure and the amount of the note. Thus, *Higgins* does not support the proposition that once the note is unenforceable the bank must return the collateral. Moreover, in *Higgins*, the bank was the plaintiff and the defendant-endorser pleaded the statute of limitations as a defense. In the present case, the bank is the defendant and the plaintiff-pledgor is pleading the statute of limitations as a means of obtaining affirmative relief. It is axiomatic that the statute of limitations is a shield, not a sword. At both the federal and state levels it has long been established that the statute is available only as a defense and not as a cause of action. In *Fowler v. Taylor*, 97 N.H. 294, 86 A.2d 325 (1952), the court stated:

> Moreover, because of the principle that the statute of limitations may not be used as a means for affirmative relief and the further principle that a plaintiff seeking equitable relief must do equity, a mortgagor or his successor in interest is not entitled to have the foreclosure of a mortgage enjoined without paying the debt.

97 N.H. at 297, 86 A.2d at 326. The New Hampshire Court cited to an A.L.R. Annotation, Annot., 164 A.L.R. 1387, which states that the statute of limitations may not be used affirmatively in a suit to compel surrender of pledged property. One of the cases upon which the annotation relies is *Weems v. Carter*, 30 F.2d 202 (4th Cir. 1929), which we find to be directly apposite

to the present case. In *Weems* the plaintiffs were suing for the return of bonds and stocks which they had pledged as collateral on certain negotiable notes executed by a company that had become insolvent. Actions on all the notes were barred by the statute of limitations. The holding of the court is as applicable today as it was then.

> The plaintiffs are third persons who have pledged their property to secure the debt of another, a debt for which they are in no way personally liable. They are asking the relief of a court of equity because the Statute of Limitations has run against the debt. In order to enforce his remedy against the collateral in his hands, the creditor does not ask or need the aid of a court. The question to be considered is whether the running of the Statute of Limitations in favor of a principal extinguishes the right of the creditor to proceed, as agreed, against the collateral. On this question there is some conflict of authority, but we agree with the learned judge below when he says that both "the weight of authority and the better reason lead to the conclusion that the running of the Statute of Limitation in favor of the principal, does not extinguish the obligation of surety on a promissory note in whose favor limitation has not run."
>
> Though a debt has been declared barred in an action on it, yet the security is unaffected.
>
> .    .    .    .    .
>
> The distinction drawn by the great weight of authority is that the running of the Statute of Limitations extinguishes the remedy, but not the right of the creditor.

30 F.2d at 203–04.

■ We rule that plaintiffs had no cause of action based on the statute of limitations and, even if it had run as to the note, it did not affect the bank's right to foreclose on the collateral.

■ We think the district court also erred when it held that *Merrimack River Sav. Bank v. Higgins* compelled a finding

that payment of interest on a demand note does not toll the statute of limitations. The general rule in New Hampshire, as elsewhere, is that interest payments on demand notes toll the statute. *First Cong. Soc. in Lyme v. Miller*, 15 N.H. 520 (1844). The reason is that an interest payment amounts to a voluntary acknowledgment of the debt from which the law implies a new promise to pay the balance. *Nutter v. Mroczka*, 303 Mass. 343, 347, 21 N.E.2d 979, 983 (1939).

█ *Higgins* does not hold otherwise. There, the bank was suing the endorser for the balance due on a note. The court held that because the endorser himself had not made any statements or actions which would toll the statute of limitation, the maker's payments of principal and interest would not toll it for him. What is normally required to toll the statute is a voluntary acknowledgment of the debt with an implied new promise to pay by the party to be charged. *Brown v. Latham*, 58 N.H. 30, 34 (1876). The endorser in *Higgins* made no such acknowledgment. In the present case, however, such an acknowledgment is not necessary; the bank is not suing the pledgor. The pledgor agreed to allow the bank to treat the securities as if they were the property of Shoup, the debtor. Thus Shoup's interest payments are enough to toll the statute as to the note and the collateral.

█ Nor, as plaintiffs assert, is this result affected by U.C.C. § 3–122(1)(b). As adopted in New Hampshire, this section provides that a cause of action accrues against the maker of a demand note upon its date of execution. N.H.Rev.Stat.Ann. § 382–A:3–122(1)(b) (1963).[3] The sole purpose of § 3–122(1)(b) is to establish that the statute of limitations begins running when the note is executed, not when the demand is made. *Id.*, comment 1. Section 3–122(1)(b) is not concerned with what actions or statements might toll the statute of limitations; it is only concerned with fixing the time when the statute begins to run.

Finally, fairness and public policy also support our holding. The bank had no reason to foreclose on the collateral or to sue for payment, because interest payments were being made regularly. If the pledgor were permitted to seek return of the collateral once the statutory period had run regardless of whether interest payments were being made by the debtor, the creditor bank would be forced to demand payment sometime before the statutory period passed to protect itself. If such a demand occurred at a time when the debtor did not have the cash to pay the entire note, the note would not be paid and the bank would foreclose on the collateral. Such a rule would destroy flexibility in the creditor-debtor relationship and would not protect the pledgor, which is the only conceivable purpose for such a rule. None of the parties' best interests would be served.

The purpose of the statute of limitations is to prevent fraudulent and stale claims from being brought when evidence of the debt is so old as to be unreliable. *Burnett v. New York Cent. R. R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). Current interest payments are fresh and reliable evidence that a debt is still owed. Thus, to effectuate its purpose the statute of limitations should be tolled by the payment of interest.

*Reversed.* Judgment for the defendant bank.

---

**3.** N.H.Rev.Stat.Ann. § 382–A:3–122(1)(b) provides:

(1) A cause of action against a maker or an acceptor accrues

(b) in the case of a demand instrument upon its date or, if no date is stated on the date of issue.