Rockingham
Nos. 98-110
     98-111

PREMIER CAPITAL, INC.

v.

CHARLES A. GALLAGHER

PREMIER CAPITAL, INC.

v.

CHARLES A. GALLAGHER & a.

November 2, 1999

*Jones, Wensley, Wirth & Azarian,* of Rochester (*Gregory D. Wirth* on the brief and orally), for the plaintiff.

*Watson, Lyons & Bosen, P.A.*, of Portsmouth (*John E. Lyons, Jr.* on the brief and orally), for the defendants.

HORTON, J. The plaintiff, Premier Capital, Inc. (Premier), appeals the decisions of the Superior Court (*Brennan,* J.) dismissing actions brought by its predecessor in interest, AMRESCO New England, L.P. (AMRESCO), against the defendants, Charles A. Gallagher, the Charles A. Gallagher Trust, and trustees Charles A. and Paula J. Gallagher. The court, following a bench trial, concluded that AMRESCO's breach of contract and fraudulent conveyance claims were untimely filed. We affirm.

On December 11, 1986, Charles Gallagher signed as president of Gallagher's Sports Center, Inc. (Gallagher's Sports), and as personal guarantor, a demand note, pursuant to which Gallagher's Sports borrowed the sum of $200,000 from the Atlantic Trust Company (Atlantic) and agreed to make monthly interest payments on the principal. In December 1987, Gallagher conveyed certain securities to a trust. The plaintiff contends that "payments on the [n]ote were made [by Gallagher's Sports] on a regular, or near regular, monthly basis through December 11, 1991," and that the corporation made an additional payment in October 1992.

The Federal Deposit Insurance Corporation (FDIC) was appointed receiver and liquidating agent for Atlantic on or about January 30, 1992. In October 1994, the FDIC transferred the demand note to AMRESCO. Following default by Gallagher's Sports and Gallagher, AMRESCO brought a contract action against Gallagher, as guarantor, on December 8, 1995.

AMRESCO subsequently filed a petition to attach Gallagher's assets. In connection with its petition to attach, AMRESCO asked Gallagher in February 1996 to produce the securities he owned. On February 26, Gallagher informed AMRESCO that his securities were being held in a trust and therefore could not be provided. AMRESCO, alleging, *inter alia,* that the conveyance of securities was fraudulent, brought an action in equity against the defendants

on June 30, 1997, under the Uniform Fraudulent Transfer Act (UFTA), RSA chapter 545-A (1997). In the petition, AMRESCO claimed an interest in the securities predicated on its pending contract claim.

AMRESCO's claims were tried but were dismissed as untimely, and its motions for reconsideration were denied. This appeal followed. AMRESCO subsequently transferred the note to Premier, who was substituted for AMRESCO as the plaintiff.

We first address whether the plaintiff's contract action was timely filed. The parties agree that the three-year limitations period set forth in RSA 508:4, I (1997) governs. They also agree that RSA 382-A:3-122 (1961) (repealed 1994) determines the date on which the plaintiff's contract action accrued. Pursuant to RSA 382-A:3-122(1)(b), a cause of action on a demand note accrues on the date of the instrument or, if no date is stated, on the date of its issuance. "The sole purpose of § 3-122(1)(b) is to establish that the statute of limitations begins running when the note is executed, not when the demand is made." *Guild v. Meredith Village Sav. Bank*, 639 F.2d 25, 28 (1st Cir. 1980); *see also Merrimack River Sav. Bank v. Higgins*, 89 N.H. 154, 155, 195 A. 369, 370 (1937).

The plaintiff brought suit on the demand note in December 1995, nearly six years after the statute of limitations lapsed. The plaintiff, however, argues that the limitations period was tolled by certain payments made on the note and by admissions of liability and willingness to pay. Gallagher argues that he never made a payment to Atlantic as a guarantor and did not reaffirm to Atlantic his obligation as guarantor during or after the limitations period.

At common law, the limitations period for an action to recover on a demand note is tolled when a renewed promise to pay can be implied from the circumstances, such as partial payment or other acknowledgments of liability and willingness to pay the debt. *See, e.g., Savings Bank v. Dow*, 69 N.H. 228, 229, 39 A. 975, 976 (1897); *Brown v. Latham*, 58 N.H. 30, 34-35 (1876). Because "[s]ection 3-122(1)(b) is not concerned with what actions or statements might toll the statute of limitations[,] [and] is only concerned with fixing the time when the statute begins to run," *Guild*, 639 F.2d at 28, principles of common law should be consulted on the question of tolling. *See* RSA 382-A:1-103 (1994) (principles of law and equity supplement Uniform Commercial Code unless displaced by its provisions).

A maker's payments or acknowledgments of liability indicating a willingness to pay the debt will toll the statute of limitations

for an action against the maker, assuming the circumstances give rise to an implied promise to renew the debt, but they will not, ordinarily, diminish a guarantor's defense of staleness. *See* 38 AM. JUR. 2D *Guaranty* § 116, at 969 (1999) (payment); 51 AM. JUR. 2D *Limitations of Actions* § 352, at 846 (1970) (acknowledgment and willingness to pay); *Holt v. Gage*, 60 N.H. 536, 542 (1881). To toll the limitations period, an acknowledgment of debt must be more than a recognition of debt; it must be an admission of liability for an unpaid debt that the party is then willing to pay. *Holt*, 60 N.H. at 542. Evidence of the debtor's willingness to pay must be presented to the finder of fact. *Id.* at 541; *see also Lang v. Gage*, 66 N.H. 624, 625, 32 A. 155, 156 (1891).

The plaintiff cites the following facts to toll the statute of limitations against Gallagher as guarantor. First, Gallagher, on behalf of Gallagher's Sports, submitted a balance inquiry to Atlantic in June 1989, which was returnable to an accounting firm. Atlantic indicated on the inquiry form that Gallagher's Sports owed it $152,516. Second, in July 1989, Gallagher's accounting firm completed a financial statement for him personally, indicating that Gallagher had guaranteed a loan from Atlantic to Gallagher's Sports with a balance of $152,500 as of December 1988. The statement was prepared, according to the accounting firm, from information provided by Gallagher. The plaintiff argues that this financial statement was submitted to Atlantic. Third, Gallagher, as president of Gallagher's Sports, signed a purchase and sale agreement and letter of notice to creditors in May 1991, stating that Portsmouth Sports Equipment, Inc. would assume Gallagher's Sports' liability to Atlantic. Fourth, the plaintiff relies on Gallagher's Sports' monthly payments of which it alleges Gallagher was personally aware.

■ We conclude that the foregoing factors do not toll the statute of limitations with regard to the guarantor. Gallagher made no payments to Atlantic in his capacity of guarantor. It is of no consequence that the guarantor may have been aware of the maker's monthly payments because his awareness does not constitute an acknowledgment of an existing debt and a willingness to pay. *See Newell v. Clark*, 73 N.H. 289, 292, 61 A. 555, 556 (1905); *Holt*, 60 N.H. at 542. Furthermore, the balance inquiry, purchase and sale agreement, and letter of notice to creditors were not communications by Gallagher in his capacity as guarantor. Finally, even though Gallagher acknowledged his contingent liability to Atlantic in his personal financial statement, that acknowledgment, standing alone, is insufficient to create an implied promise to renew the guaranty

because the document does not indicate Gallagher's willingness to pay the debt. *Cf. Manning v. Wheeler*, 13 N.H. 486, 487 (1843) (the expression of a willingness to pay is indispensable). Accordingly, we affirm the trial court's finding that Gallagher did not renew his promise to Atlantic to guarantee the performance of Gallagher's Sports on the note.

The statute of limitations expired on the plaintiff's claim against Gallagher personally on December 11, 1989. We reject the plaintiff's argument for an extension based on the FDIC's intervening receivership, see 12 U.S.C. § 1821(d)(14) (1994), because the limitations period provided by New Hampshire law expired prior to the FDIC's acquisition of the demand note, *see F.D.I.C. v. Schrader & York*, 991 F.2d 216, 220 (5th Cir. 1993), *cert. denied*, 512 U.S. 1219 (1994).

In view of the foregoing, we affirm the trial court's dismissal of the plaintiff's contract claim. We also affirm the dismissal of the plaintiff's fraudulent conveyance claim because it arose out of the contract action. *See* RSA 545-A:4, I, :1, III (fraudulent conveyance action must be predicated upon an underlying right or potential right to payment); *cf. Ricker v. Mathews*, 94 N.H. 313, 318, 53 A.2d 196, 199-200 (1947) (creditor entitled to set aside conveyance only to extent necessary to satisfy his claim). We need not reach the parties' remaining arguments in light of our decision.

*Affirmed.*

All concurred.